TOWN OF SPRINGFIELD, VERMONT,
and Vermont Public Power
Supply Authority

v.

V. Louise McCARREN, Rosalyn L. Hunne-
man, and Samuel S. Bloomberg, in their
official capacities as members of the
State of Vermont Public Service Board,

Town of Cavendish, Vermont,
Defendant-Intervenor.

Civ. A. No. 82–157.

United States District Court,
D. Vermont.

Oct. 15, 1982.

John Parker, Parker, Lamb & Ankuda, P.C., Springfield, Vt., Richmond F. Allan, Duncan, Weinberg & Miller, P.C., Washington, D.C., Stephen Walke, Paterson, Walke & Pratt, P.C., Montpelier, Vt., for plaintiffs.

Harriet A. King, King & King, Waitsfield, Vt., for defendants.

Sarah E. Vail, Chester, Vt. and Joseph E. Frank, Paul, Frank & Collins, Inc., Burlington, Vt., for defendant-intervenor.

## MEMORANDUM OF DECISION

HOLDEN, Chief Judge.

Plaintiffs in this action seek a declaratory judgment that the Federal Energy Regulatory Commission has exclusive jurisdiction over the licensing of the hydroelectric project they propose to build, and the Vermont Public Service Board's order finding that it had concurrent jurisdiction to issue a certificate of public good was beyond its jurisdiction, illegal, and void. The defendant Public Service Board members and the defendant-intervenor Town of Cavendish contend the Public Service Board does have jurisdiction over the licensing of the project, but they urge the court not to reach that question. They argue that absence of federal question jurisdiction, the Eleventh Amendment, the doctrine of *res judicata*, the Anti-Injunction Act, and principles of equity, comity, and federalism prevent the court from reaching the merits of the case. The defendants have moved for a preliminary determination of the jurisdictional issues, and the plaintiffs have moved for summary judgment. The court concludes that none of the jurisdictional barriers advanced by the Board members and Cavendish precludes declaratory relief on the merits, and the plaintiffs are entitled to summary judgment.

## BACKGROUND

The Town of Springfield, Vermont, and the Vermont Public Power Supply Authority have applied to the Federal Energy Regulatory Commission (FERC) for a license to construct and operate a hydroelectric project near Springfield on the Black River, a navigable river. FERC has taken jurisdiction and is considering the application.

On January 25, 1980, the Town of Cavendish petitioned the Vermont Public Service Board for a declaratory ruling that the Black River project was subject to the Public Service Board's jurisdiction. The Town of Springfield appeared as respondent before the Board, and the Concerned Citizens of the Black River Valley were allowed to intervene. In an order dated April 7, 1982, and filed April 8, 1982, a majority of the Public Service Board ruled, 2–1, that it had jurisdiction over the project. *Petition of the Town of Cavendish,* P.S.B. Docket No. 4444 (April 8, 1982). The Board's order also forbade Springfield from commencing site preparation until the Board had issued a certificate of public good. *Id.,* slip op. at 4. Defendant Samuel Bloomberg was the dissenting member of the Board.

Springfield did not appeal the Board's ruling to the Vermont Supreme Court. On May 4, 1982, the plaintiffs brought this action against the Public Service Board. The parties filed extensive briefs, and on July 30, 1982, the court heard oral argument on the defendant's application for a preliminary determination of jurisdiction and the plaintiffs' motion for summary judgment. On August 3, 1982, the court granted the plaintiffs leave to amend their complaint to substitute the individual Board members as parties defendant.

## DISCUSSION

### I. JURISDICTION AND RELATED ISSUES

The court turns first to the jurisdictional challenges advanced by the Board members and the Town of Cavendish as intervenor.

#### A. *Federal Question Jurisdiction*

■ The Town of Cavendish and the Public Service Board defendants urge that this court is without subject matter jurisdiction. This argument must be rejected. As Judge Coffrin held in an earlier action for declaratory and injunctive relief brought by these same plaintiffs against another Vermont state agency that sought to exercise jurisdiction over the Black River

project, "it cannot seriously be doubted that the federal preemption issue here 'arises under the Constitution, laws, or treaties of the United States' so as to establish federal question jurisdiction under 28 U.S.C. § 1331." *Town of Springfield v. State of Vermont Environmental Board,* 521 F.Supp. 243, 248 (D.Vt.1981).

■ That the federal question presented here could possibly arise as a defense to some state court action is not controlling. "[I]f there is never [federal] jurisdiction when a state defendant has a dispositive defense grounded in federal law, the Anti-Injunction Act would be surplusage." *United Air Lines, Inc. v. Division of Industrial Safety,* 454 U.S. 944, 949, 102 S.Ct. 485, 488, 70 L.Ed.2d 255 (1981) (opinion of White, J., dissenting from the denial of certiorari). The plaintiffs' claim here is that a federal agency has exclusive jurisdiction. This is a proposition of federal law that the plaintiffs have a right to test in federal court. The Declaratory Judgment Act was intended to provide such plaintiffs as these a tool that they might use to test the validity of propositions of federal law—assuming, of course, that a ripe and justiciable controversy exists for the court to adjudicate. The Act "exists as an instrument to protect the citizen against the dangers and damages that may result from erroneous belief as to his rights under state or federal law." *Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 250–51, 73 S.Ct. 236, 243, 97 L.Ed. 291 (1952) (concurring opinion of Reed, J.).

The *Wycoff* case is one of the leading cases construing the Declaratory Judgment Act. In *Wycoff,* a carrier of motion picture films and newsreels sought a declaratory judgment that it was engaged in interstate commerce, and an injunction perpetually forbidding the Public Service Commission of Utah from "interfering" with its activities on routes authorized by the Interstate Commerce Commission. The plaintiff offered no evidence at trial of any past, threatened, or pending interference, and limited its proof to showing that it was engaged in interstate commerce. *Id.,* 344

U.S. at 240, 73 S.Ct. at 238 (opinion of the Court). The trial court found that no interference had been made or threatened. *Id.* Consequently, the Supreme Court held that there was no showing of that danger of irreparable injury which is necessary to equitable relief by injunction. *Id.* at 240–41, 73 S.Ct. at 238. To the Court, it appeared . that that plaintiff (the respondent on appeal) had "abandoned the suit as one for injunction but [sought] to support it as one for declaratory judgment." *Id.* at 241, 73 S.Ct. at 239. The Court accordingly directed its attention to the prerequisites for jurisdiction in a declaratory action.

The Court found the "disagreement" between the parties was too "nebulous," *id.* at 244, 73 S.Ct. at 240:

> The complainant in this case does not request an adjudication that it has a right to do, or to have, anything in particular. *It does not ask a judgment that the Commission is without power to enter any specific order or take any concrete regulatory step.* It seeks simply to establish that, as presently conducted, respondent's carriage of goods between points within as well as without Utah is all interstate commerce. One naturally asks, "So what?" To that ultimate question no answer is sought.

*Id.* (emphasis added).

Because the question as to whether the Wycoff Company was engaged in interstate commerce was too abstract, unripe, and meaningless except as a defense to a possible state action, the Court ordered that the case should be dismissed. The opinion contains a widely-quoted but somewhat ambiguous dictum:

> Respondent here has sought to ward off possible action of the petitioners by seeking a declaratory judgment to the effect that he will have a good defense when and if that cause of action is asserted. Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful if a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action.

*Id.* at 248, 73 S.Ct. at 242.

While the Court did no more than express doubts about the existence of federal question jurisdiction in such cases, *see United Air Lines, Inc. v. Division of Industrial Safety, supra,* 454 U.S. at 949–50, 102 S.Ct. at 488 (opinion of White, J., dissenting from the denial of certiorari), lower courts have since adopted the dictum as a basis for holding that no federal question jurisdiction existed in particular settings. There is, however, a split of authority on the proper interpretation and application of the *Wycoff* dictum. Some courts have held that, while federal question jurisdiction is lacking where the declaratory plaintiff seeks a declaration of federal rights that has no meaning apart from a state court action, federal question jurisdiction does exist where the declaratory plaintiff has an actual and present controversy with the declaratory defendant and seeks a declaration of federal law that has meaning independent of any state case, even though the federal right might also be asserted as a defense in a state case. In cases where the declaratory plaintiffs challenge state regulatory schemes on federal preemption grounds, these courts hold that federal question jurisdiction exists if there is a ripe and justiciable controversy and the declaratory plaintiffs are subject to conflicting state and federal regulation, even though the declaratory plaintiffs may be defendants in state court actions. A second body of precedent holds that federal preemption can only be in the nature of a defense to a state court action and provides no independent basis for federal question jurisdiction in a suit for a declaratory judgment.

The First and Fifth Circuits, and, with one aberration, the Ninth Circuit, have adopted the first approach; the Sixth, Eighth, and Tenth Circuits have hewed to the latter approach; the Third Circuit, after expressly reserving decision, also appears to have taken the latter approach; and the Second Circuit has apparently not yet spoken.[1] *See First Federal Savings & Loan Association v. Greenwald,* 591 F.2d 417, 423 n. 8 (1st Cir.1979); *Braniff International, Inc. v. Florida Public Service Commission,* 576 F.2d 1100, 1104–06 (5th Cir. 1978); *Conference of Federal Savings and Loan Associations v. Stein,* 604 F.2d 1256, 1259 (9th Cir.1979), *aff'd mem.,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980); *and Rath Packing Co. v. Becker,* 530 F.2d 1295 (9th Cir.1975), *aff'd sub nom. Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *but cf. United Air Lines, Inc. v. Division of Industrial Safety,* 633 F.2d 814 (9th Cir.1980), *cert. denied,* 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 255 (1981). *Contra, Exxon Corp. v. Hunt,* 683 F.2d 69 (3d Cir.1982); *Michigan*

1. While the court has been unable to locate any Second Circuit case discussing federal question jurisdiction in a declaratory suit challenging state regulation on the ground of federal preemption, another case may provide some inkling of how it might rule. In *Warner-Jenkinson Co. v. Allied Chemical Corp.,* 567 F.2d 184 (2d Cir.1977), the Second Circuit dealt with a related problem of federal question jurisdiction, and took a somewhat broader view of jurisdiction than other courts have done. *Warner-Jenkinson* was a licensee's challenge to the validity of a patent. The Third Circuit had previously held that a licensee could not bring suit in federal court for a declaration of patent invalidity when the licensor had threatened to bring suit for breach of the licensing agreement. *Thiokol Chemical Corp. v. Burlington Industries, Inc.,* 448 F.2d 1328 (3d Cir.1971), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 684, 30 L.Ed.2d 668 (1972). Under these circumstances, the Third Circuit held, invalidity of the patents at issue could only arise as a defense to a state law suit. *Id.,* 448 F.2d at 1330–31. The D.C. Circuit subsequently criticized the holding in *Thiokol Chemical Corp.* as being "of questionable force." *Hanes Corp. v. Millard,* 531 F.2d 585, 594 n. 8 (D.C.Cir.1976). The Second Circuit, in *Warner-Jenkinson,* did not definitively adopt the position of either the Third Circuit or the D.C. Circuit:

> If the plaintiffs were seeking a declaration of their right to assert patent invalidity as a defense to a contract action for royalties, which itself could not be brought in federal court [citations omitted], one might conclude that no 'arising-under' jurisdiction would be present. See *Thiokol Chemical Corp. v. Burlington Industries* [citation omitted]. See also *Hanes Corp. v. Millard,* 174 U.S.App. D.C. 253, 531 F.2d 585, 594–95 n. 8 (1976).

*Warner-Jenkinson, supra,* at 186–87. But the court found it unnecessary to take sides because in *Warner-Jenkinson* there was no breach of contract suit pending in state court, and the declaratory defendant could either bring a contract suit in state court or a patent infringement suit in federal court. Thus patent invalidity, while a possible defense to a state suit, also created federal question jurisdiction. *Id.* at 187.

The Second Circuit cited *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950), for the thesis that "an action for declaratory judgment may be brought in federal court ordinarily only if there would exist a basis for federal jurisdiction in a coercive action between the parties." *Warner-Jenkinson, supra,* 567 F.2d at 186. The *Skelly Oil Co.* Court had articulated the point in this way:

> Prior to [the Declaratory Judgment Act], a federal court would entertain a suit on a contract only if the plaintiff asked for an immediately enforceable remedy like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to a federal court. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. But the requisites of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate—were not impliedly repealed or modified.

*Skelly Oil Co., supra,* 339 U.S. at 671–72, 70 S.Ct. at 879. The Harvard Law Review note cited with apparent approval in *Skelly Oil Co., id.* at 674, 70 S.Ct. at 880, suggested that federal jurisdiction over a declaratory suit is proper where a coercive cause of action had already accrued to either party, "or if it is relatively certain that coercive [federal court] litigation will eventually ensue between the same parties if a declaration is refused." *Developments in the Law—Declaratory Judgments—1941–1949,* 62 Harv.L.Rev. 787, 794 (1949).

Adopting this line of analysis, the court finds it need not determine at this point whether the plaintiffs currently have a good coercive cause of action—that is to say, whether they are now entitled to injunctive relief—because it is relatively certain that in the absence of declaratory relief, the plaintiffs would eventually satisfy the prerequisites for injunctive relief.

*Savings and Loan League v. Francis,* 683 F.2d 957, 961–62 (6th Cir.1982) (2–1)[2]; *Lawrence County v. State of South Dakota,* 668 F.2d 27, 30–32 (8th Cir.1982); *Home Federal Savings and Loan Association v. Insurance Department,* 571 F.2d 423, 426 (8th Cir.1978); cf. *Madsen v. Prudential Federal Savings & Loan Association,* 635 F.2d 797, 803–04 (10th Cir.1980), cert. denied, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). See also *Trent Realty Associates v. First Federal Savings & Loan Association,* 657 F.2d 29, 34 (3d Cir.1981) ("We need not decide whether an original action by First Federal in which the complaint specifically referred to the federal regulations and sought declaratory and injunctive relief on the ground of federal preemption could be maintained in federal court"); compare *Allegheny Airlines, Inc. v. Pennsylvania Public Utility Commission,* 465 F.2d 237, 241 (3d Cir.1972), cert. denied, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973) (dictum implying no federal jurisdiction would exist but for diversity of parties), with *National State Bank v. Long,* 630 F.2d 981 (3d Cir.1980) (assuming jurisdiction *sub silentio* on facts virtually identical to those of *Conference of Federal Savings*

*and Loan Associations v. Stein, supra,* in which the Ninth Circuit upheld jurisdiction, and *Michigan Savings and Loan League v. Francis, supra,* in which the Sixth Circuit found there was no jurisdiction).

In *First Federal Savings & Loan Association v. Greenwald, supra,* the First Circuit held that federal question jurisdiction existed where the declaratory plaintiffs sought an adjudication that certain Massachusetts banking legislation was preempted by the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. In that case, First Federal had been sued in state court by the Massachusetts Commissioner of Banks, and had removed that action to federal court. First Federal filed a counterclaim in federal court seeking a declaratory judgment that the state legislation had been preempted. In addition, First Federal, together with a number of other savings and loan associations, instituted a separate civil action also praying for a declaratory judgment of preemption. The two lawsuits were consolidated for hearing and decision. While the First Circuit considered the question whether the Commissioner's state action had been properly removed "not easy," id. at 423,[3] it found that question unneces-

---

**2.** The majority in *Michigan Savings and Loan League, supra,* cited *Williams v. First Federal Savings and Loan Association of Arlington,* 651 F.2d 910 (4th Cir. 1980), for the proposition that the Fourth Circuit has joined the Eighth and Tenth Circuits in holding that federal preemption cannot form the basis for a declaratory action in the federal courts. See *Michigan Savings and Loan League, supra,* 683 F.2d at 962. This interpretation of *Williams* is highly questionable. The Fourth Circuit, in *Williams,* in fact took jurisdiction over the case but found it unnecessary to reach the question of federal preemption because it resolved the suit on state law grounds. *Williams, supra,* 651 F.2d at 921–23. While the *Williams* court expressed some doubts as to federal question jurisdiction in the case, it proceeded on the belief that all of the cases consolidated for decision properly raised a federal question. Id. at 913 n. 2. Indeed, the *Williams* case was cited by the appellee, First Federal, in *Trent Realty Associates v. First Federal Savings and Loan Association,* 657 F.2d 29 (3d Cir. 1981), as support for the proposition that federal question jurisdiction existed in that case, in which First Federal had won a summary judgment on the merits in the district court. The Third Circuit found it diffi-

cult to parse the *Williams* decision. *Trent Realty,* 657 F.2d at 35.

**3.** There is a split of authority as to whether removal jurisdiction exists where the defendant contends that the plaintiff's state law claims have been preempted by federal law. Among the cases upholding removal jurisdiction under such circumstances are *Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (state court suit seeking injunction against strike in violation of "no-strike" provision of collective bargaining agreement held properly removed to federal court; suit deemed to arise under § 301 of the Labor Management Relations Act, which preempts state law); *North Davis Bank v. First National Bank of Layton,* 457 F.2d 820 (10th Cir.1972) (state suit for injunction against construction of branch bank allegedly in violation of Utah banking law held properly removed because definition of "branch bank" arises under federal law); *Johnson v. England,* 356 F.2d 44 (9th Cir. 1966), cert. denied, 384 U.S. 961, 86 S.Ct. 1588, 16 L.Ed.2d 674 (1966) (state suit seeking order compelling arbitration of labor dispute held properly removed because federal labor law preempts state law); *Teamsters Local Un-*

sary to decide, since "[t]he matter of preemption and related federal issues were the focal point of the declaratory judgment suit, hence federal question jurisdiction existed in that case under any analysis." *Id.* (footnote omitted).

Similarly, in *Rath Packing Co. v. Becker, supra,* the Ninth Circuit held that the district court had federal question jurisdiction over a suit in which a bacon processor sought declaratory and injunctive relief against the enforcement of California's meat labelling laws on the ground that they were preempted by the Wholesome Meat Act of 1967, 21 U.S.C. § 601 *et seq.,* and a federal regulation promulgated thereunder. As in *First Federal Savings & Loan, supra,* the course of events began with state enforcement efforts. State officials first ordered 84 lots of Rath bacon "off sale" for short weight. Subsequently, they commenced litigation in two state courts to enforce the state meat weight labelling law. Rath removed both actions to federal district court and also filed two declaratory judgment actions in federal district court. After the filing of the declaratory complaints, the district court remanded the en-

forcement actions to the state courts, but it later refused to dismiss Rath's declaratory suits. The Ninth Circuit affirmed the district court's jurisdictional determination. *Rath, supra,* 530 F.2d at 1302–03.

The Court of Appeals in *Rath* contrasted the case with *Chandler v. O'Bryan,* 445 F.2d 1045 (10th Cir.1971), *cert. denied,* 405 U.S. 1049, 92 S.Ct. 1310, 31 L.Ed.2d 592 (1972). In *Chandler,* O'Bryan had brought a libel action against Chandler, a United States district judge, in state court. O'Bryan alleged that Chandler had libelled him in statements made to a newspaper. Chandler removed the action to federal court, but the federal district court, finding that the statements were not made in the course of Chandler's official duties or under the color of his office, remanded the case to state court, since there was no diversity of citizenship. After O'Bryan won a verdict in state court, Chandler sued in federal court for a declaratory judgment to set aside the state judgment. The Tenth Circuit, reversing the trial court, held that the federal courts lacked subject matter jurisdiction, since "Judge Chandler's assertion of judicial im-

*ion No. 116 v. Fargo-Moorhead Automobile Dealers Association,* 459 F.Supp. 558 (D.N.D. 1978), *rev'd on other grounds,* 620 F.2d 204 (8th Cir.1980) (state suit for enforcement of labor arbitration award held properly removed); *First Federal Savings & Loan Association of Jackson County v. First Federal Savings & Loan Association of Huntsville,* 446 F.Supp. 210 (N.D.Ala.1978) (state suit expressly based entirely upon state and common law of unfair competition held properly removed because law of unfair competition between federal savings and loan associations was preempted by federal regulations); *State of New York v. Local 144,* 410 F.Supp. 225 (S.D.N.Y.1976) (state suit founded on state statutory and constitutional provisions held properly removed because federal law had preempted the law relating to strikes against health care institutions); and *Rettig v. Arlington Heights Federal Savings and Loan Association,* 405 F.Supp. 819 (N.D.Ill.1975) (state suit charging breach of fiduciary duties and improper diversion of funds under state law held properly removed because federal law relating to federal savings and loan associations was preemptive).

Other cases hold to the contrary. *First National Bank of Aberdeen v. Aberdeen National Bank,* 627 F.2d 843 (8th Cir.1980) (state suit

relying on state law of unfair competition held improperly removed; federal preemption of banking regulations is only in the nature of a defense to the state suit); *State v. American League of Professional Baseball Clubs,* 460 F.2d 654 (9th Cir. 1972) (state case alleging violations of state and federal antitrust laws held improperly removed; since the state court had no jurisdiction over federal antitrust claims, the federal court could have no jurisdiction on removal of those claims; as for state antitrust claims, "federal preemption is a matter of defense to a state law claim, and not a ground for removal," *id.* at 660); *Marquette National Bank of Minneapolis v. First National Bank of Omaha,* 422 F.Supp. 1346 (D.Minn.1976) (state suit alleging, *inter alia,* violation of Minnesota usury law held improperly removed; contention that federal regulation of national banks preempts state law was a matter of defense); *State of New York v. Local 115,* 412 F.Supp. 720 (E.D.N.Y.1976) (if the plaintiff's claim depends upon the continued vitality of state labor law, contention that federal labor law had preempted the field was not enough to support removal).

Whatever the proper resolution of this issue may be, removal jurisdiction is not implicated in the instant case.

munity [was] 'in reality in the nature of a defense' to that suit." *Id.,* 445 F.2d at 1056.

The *Rath* court distinguished the two cases:

> Unlike *Chandler,* Rath's claims have vitality in the absence of the litigation in state court; Rath had the right to a federal forum before the institution of the state court actions. Chandler's federal claim was purely in the nature of a defense to the libel action. Brought without reference to the underlying state court proceeding, Chandler's claim would be a useless gesture: no one would care whether Chandler acted under the protection accorded by the courts to his office if O'Bryan had refrained from suing him. That Rath's claim is or can be the basis for a defense to the state court actions states a mere truism; the test is whether Rath has created a federal controversy where none existed or is seeking an adjudication of a claim which is essentially meaningful only when pleaded as a defense to the particular pending state court actions.

*Rath, supra,* 530 F.2d at 1305–06 (footnote omitted). Because Rath was subjected to conflicting state and federal requirements, there was a ripe and ongoing controversy that gave rise to federal question jurisdiction. The Supreme Court, in affirming the Ninth Circuit on the merits, did not deem the defendants' jurisdictional objections worthy of discussion. Despite the fact that the jurisdictional issue had been raised below and was addressed at length by the Court of Appeals, *see id.,* 530 F.2d at 1302–06, both the Supreme Court majority and Justices Rehnquist and Stewart, dissenting in part, proceeded directly to the merits without questioning jurisdiction over the case. *Jones v. Rath Packing Co., supra,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 *passim.*

■ The reasoning of another panel of the Ninth Circuit in *Conference of Federal Savings and Loan Associations v. Stein, supra,* was similar to that of the Court of Appeals in *Rath. Stein* was a challenge to state "anti-redlining" regulations. "Redlin-

ing" is mortgage credit discrimination based on the characteristics of the neighborhood surrounding the would-be borrower's dwelling. The Federal Home Loan Bank Board had promulgated anti-redlining regulations implementing the Home Owners' Loan Act of 1933, 12 U.S.C. § 1461 *et seq.,* and various federal civil rights statutes. California also adopted a statute that set up a detailed anti-redlining regulatory scheme. The plaintiffs, all federally chartered savings and loan associations, sued for a declaratory judgment that the California Housing Financial Discrimination Act of 1977, as applied to them, was preempted by federal legislation and regulations. The defendant contended there was no federal question jurisdiction because preemption was only a defense to a potential state case, citing *Public Service Commission v. Wycoff Co., supra.* The court rejected this contention, distinguishing *Wycoff* on the ground that in that case "there was no proof of any threatened or probable act by the state commission which might cause the irreparable injury essential to equitable relief or which could serve to create the actual controversy necessary for declaratory judgment jurisdiction." *Stein, supra,* 604 F.2d at 1259. The *Stein* court noted that, as in *First Federal Savings & Loan, supra,* " 'Both the state and federal regulations [were] currently in effect, subjecting the associations to conflicting requirements,' " and accordingly "[a]n actual justiciable controversy [was] thus presented." *Stein, supra,* 604 F.2d at 1259. On appeal, the Supreme Court summarily affirmed. *Stein v. Conference of Federal Savings and Loan Associations,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980) (mem.).

In *Braniff International, Inc. v. Florida Public Service Commission, supra,* the Fifth Circuit was also called upon to construe *Wycoff.* The district court had dismissed the case for want of subject matter jurisdiction, so the only question on appeal was the existence *vel non* of federal question jurisdiction. The facts were similar to those of the instant case. The plaintiffs, six airlines, were required under federal law to obtain "Certificates of Public Convenience

and Necessity" from a federal agency, the Civil Aeronautics Board. The Florida Legislature passed a statute subjecting airlines to further regulation by the defendant Florida Public Service Commission. One of the plaintiff airlines had failed to comply with a Florida Public Service Commission rule regarding notice of change of schedule. A state-certified airline filed a complaint before that body, which then issued an order that the offending airline, Southern Airways, Inc., show cause why it should not be fined or ordered to cease and desist from the offending conduct. Southern, instead of complying with the show cause order, joined with five other airlines in filing suit against the Commission and its individual members in federal district court for declaratory relief that the State regulatory scheme violated the Supremacy Clause, the Commerce Clause, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The complaint also sought an injunction against enforcement of the state regulatory plan.

The district court, relying on *Wycoff,* dismissed the case:

> [P]laintiffs have failed to make out a case for federal-question jurisdiction. This action seeks merely to obtain for plaintiffs a federal defense to the action pending before the Florida Public Service Commission. The cause of action which defendants threaten to institute will involve only an issue of state law—whether plaintiffs should be required to comply with the PSC's notice provision. That a defense based on federal law will be asserted is immaterial to the jurisdiction of this court.

*Quoted in Braniff International, id.,* 576 F.2d at 1103.

The Fifth Circuit, speaking through Circuit Judge Elbert Tuttle, reversed. At the outset, the court noted that "during the 26 years since its decision in *Wycoff,* the Supreme Court has never invoked the rationale [of the dictum in *Wycoff*] to obtain the result reached by the district court here." 576 F.2d at 1104. Judge Tuttle conceded that several courts of appeals had relied on

the *Wycoff* dictum to sustain dismissals for lack of subject matter jurisdiction. "However, the only common threat [*sic*] appearing in these cases is the dearth of discussion and analysis." *Id.* The court proceeded to identify several features of the *Wycoff* case that limit the applicability of its dictum:

> The *Wycoff* Court, with the benefit of a full trial record, had determined on the merits that no injunction could issue, since there was "no proof of any threatened or probable act of the defendants which might cause the [requisite] irreparable injury." In the present case the state, through the Commission, already had set in motion the very regulatory processes whose constitutionality was challenged through appellants' suit. As developed by the pleadings and other matters thus far a part of the record, it simply cannot be said that injunctive relief is foreclosed here as it was in *Wycoff.* Appellants' suit, therefore, cannot be characterized as nothing more than an attempt "to ward off possible action of the appellees by seeking a declaratory judgment to the effect that [they] will have a good defense when and if" that action is taken.
>
> Nor can it be doubted that these appellants, whose standing in this matter cannot seriously be questioned, have not presented a true "case or controversy" as required by Article III. That defect undoubtedly played a crucial role in the judicial demise of the *Wycoff* plaintiff's claim. Here, however, the circumstances show that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant [relief]."

*Id.* at 1105 (citations and footnote omitted) (bracketed text supplied by the Fifth Circuit).

The Fifth Circuit concluded: "That appellants' constitutional claim is or may be a defense to the Commission's actions states a mere truism; it is not, under the circumstances, a limitation upon the power of the district court to entertain the controversy before it." *Id.* at 1106. It held that where

a party seeks declaratory and injunctive relief against the enforcement of an unconstitutional state statute, if the other requirements for the taking of federal question jurisdiction are met, the "mere fact that the constitutional claims might be raised before a state administrative body charged with enforcement of the statute does not alone deprive the court of jurisdiction." *Id.* (footnote omitted).[4]

Those courts of appeals that have held federal preemption cannot form the basis for federal question jurisdiction in a declaratory action have rested their decisions on the ground that federal preemption was 'actually' in the nature of a defense to a state law claim. *E.g., United Air Lines, Inc. v. Division of Industrial Safety, supra,* 633 F.2d at 817 ("United's allegations of federal question jurisdiction in this appeal remain defensive in nature"). This reasoning proves too much. Parties who object to state statutes, regulations, or administrative rulings on Supremacy Clause or other federal law grounds frequently prefer to bring anticipatory challenges, for declaratory or injunctive relief, or for both, rather than await the opportunity to make their defense in state enforcement actions in which they face the danger of punishment should their objections turn out to be ill-founded. *Cf. Ex parte Young,* 209 U.S. 123, 165, 28 S.Ct. 441, 456, 52 L.Ed. 714 (1908). All such anticipatory, declaratory and injunctive actions are essentially "defensive in nature." Nonetheless, if the controversy is ripe and justiciable, the federal courts have jurisdiction to declare the rights of the parties.

In the *United Air Lines* case, *supra,* United Air Lines brought suit to enjoin the enforcement of California health and safety regulations at United's facilities at the San Francisco International Airport. United al-

leged that the jurisdiction of the Federal Aviation Agency over their facilities was exclusive, and that California law was preempted. The Court of Appeals reversed the district court's grant of a preliminary injunction. Without citing either *Conference of Federal Savings and Loan Associations v. Stein, supra,* or *Rath Packing Co. v. Becker, supra,* both of which were recent Ninth Circuit precedents that had been affirmed by the Supreme Court, the court held there was no subject matter jurisdiction. "It is Hornbook Law that federal jurisdiction must affirmatively appear in the complaint." *United Air Lines, supra,* 633 F.2d at 815. "It is not enough that a federal question appears in the complaint - as an anticipation of or reply to a probable defense [citations omitted], or that the claim asserted is in the nature of a defense to a threatened or pending action." *Id.* at 816–17.

The Supreme Court denied certiorari. *United Air Lines, Inc. v. Division of Industrial Safety, supra,* 454 U.S. 944, 102 S.Ct. 485, 70 L.Ed.2d 255 (1981). Justice White dissented from this disposition of the case. He considered the Ninth Circuit to have "confused two distinct lines of reasoning." *Id.* at 946, 102 S.Ct. at 486 (opinion of White, J., dissenting from the denial of certiorari). One of those lines was the familiar rule in the *Mottley* case, *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), that a plaintiff cannot get into federal court on the basis of a federal defense the plaintiff expects the defendant to assert:

> In each of the above cases [*Mottley, Tennessee v. Union and Planters Bank,* 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894); *Metcalf v. Watertown,* 128 U.S. 586, 9 S.Ct. 173, 32 L.Ed. 543 (1888) ], the federal plaintiff's cause of action against the defendant was not grounded in federal

---

4. Here, the plaintiffs' Supremacy Clause challenge is not directed at a state statute, but at an administrative ruling. This distinction does not make the Fifth Circuit's analysis inapplicable. Moreover, though plaintiffs seek only declaratory relief, plus "such other and further relief as is just and appropriate," it is "relatively certain," *see above,* note 1, that in the absence

of declaratory relief the plaintiffs would eventually have a coercive cause of action for equitable relief since, as in *Braniff International,* here the Public Service Board "already had set in motion the very regulatory processes" whose constitutionality is challenged. *Id.,* 576 F.2d at 1105.

law; he merely sought to adjudicate the validity of an anticipated defense to his action. Here, United's complaint, as I read it, included the claim that under federal law the Federal Aviation Administration had exclusive jurisdiction to oversee safety at airline maintenance facilities and therefore, under the supremacy clause, state regulation was foreclosed. No part of this claim was grounded in state law.

*United Air Lines, Inc. v. Division of Industrial Safety, supra,* 454 U.S. at 947, 102 S.Ct. at 487 (opinion of White, J., dissenting from the denial of certiorari).

The second line of reasoning, Justice White wrote, "substantially misread [the Supreme Court's] previous cases on when the 'defensive' character of a federal question is insufficient to create federal-court jurisdiction." *Id.* at 946, 102 S.Ct. at 486. He construed the dismissal in *Wycoff* to have resulted "because the federal claim was too abstract, anticipatory, and not ripe for decision." *Id.* at 949, 102 S.Ct. at 488. He criticized the holding of the Court of Appeals:

> The suggestion that a defendant in a pending or threatened state action based on state law is foreclosed on jurisdictional grounds from seeking a federal declaratory judgment or an injunction based on the claim that the state action is barred by federal statute or the Federal Constitution makes little sense in light of the holdings of this Court. Under the *Younger v. Harris,* 401 U.S. 37 [91 S.Ct. 746, 21 L.Ed.2d 639] (1971), line of cases, comity and federalism require a federal court to hold its hand and dismiss rather than interfere with a pending state criminal proceeding, by adjudicating a federal defense that has been or might be raised in that proceeding. Certain civil proceedings are subject to the same rule. But these holdings do not rest on jurisdictional grounds, and they do not apply when a state proceeding is not pending and in any event do not apply to all civil proceedings. Furthermore, if there is never federal jurisdiction when a state defendant has a dispositive defense grounded in

federal law, the Anti-Injunction Act would be surplusage. Under this theory, all such litigants would be required to pursue their federal claims in state court. Perhaps they should, but that is not what the present jurisdictional statutes and our cases construing them require.

. . . .

In my view, the holding below is wrong. *United Air Lines, supra,* 454 U.S. at 948–50, 102 S.Ct. at 488.

■ Counsel for the Town of Cavendish suggested at oral argument that since Justice White failed to get three of his colleagues to join him to grant certiorari, all eight remaining Justices approved the lower court's reasoning. There is no merit whatever to this contention. The denial of certiorari means nothing other than that the Supreme Court chose not to review the case. As Justice Frankfurter once explained:

> The sole significance of . . . denial of a petition for certiorari need not be elucidated to those versed in the Court's procedures. It simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter of "sound judicial discretion." A variety of considerations underlie denials of the writ, and as to the same petition different reasons may lead different Justices to the same result. . . . Narrowly technical reasons may lead to denials. Review may be sought too late; the judgment of the lower court may not be final . . . . A case may raise an important issue but the record may be cloudy. It may be desirable to have different aspects of an issue further illumined by the lower courts. Wise adjudication has its own time for ripening.

*Maryland v. Baltimore Radio Show,* 338 U.S. 912, 917–18, 70 S.Ct. 252, 254, 94 L.Ed. 562 (1950) (opinion of Frankfurter, J., respecting the denial of the petition for writ of certiorari). The Supreme Court has since reiterated that it is "well-settled" that a denial of certiorari imports no implication concerning its view of the merits. *Hughes*

*Tool Co. v. Trans World Airlines,* 409 U.S. 363, 366 n. 1, 93 S.Ct. 647, 650 n. 1, 34 L.Ed.2d 577 (1973).

As Justice White pointed out in *United Air Lines, supra,* 454 U.S. at 948, 102 S.Ct. at 488, no Supreme Court case has ever held that a federal court cannot take cognizance of an action predicated on federal question jurisdiction and seeking a declaration that federal law preempts state regulation. On the contrary, the Supreme Court has routinely heard cases asking for declaratory or injunctive relief against state regulation alleged to be preempted by federal law, and it has adjudicated those cases on the merits, without any doubt as to jurisdiction. *Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Jones v. Rath Packing Co., supra,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Burbank v. Lockheed Air Terminal,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Florida Avocado Growers v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Heinz v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941), *cited in United Air Lines, supra,* 454 U.S. at 948, 102 S.Ct. at 488 (opinion of White, J., dissenting from the denial of certiorari). Counsel has not called to the attention of the court any Second Circuit case adopting the approach of the circuit court in *United Air Lines, supra,* nor has the court been able to locate any such Second Circuit case. The court chooses to follow the First and Fifth Circuits, *see First Federal Savings & Loan Association v. Greenwald, supra,* and *Braniff International, supra;* the two Ninth Circuit precedents affirmed by the Supreme Court, *Rath* and *Stein,* discussed above; and this District's own precedent, *Town of Springfield v. State of Vermont Environmental Board, supra,* and finds the reasoning of the circuit court in *United Air Lines, supra,* unpersuasive. This case is "quite different from *Public Service Comm'n v. Wycoff Co.,* 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291, where a carrier sought relief in a federal court against a state commission in order 'to guard against the possibility,' *id.,* at 244, 73 S.Ct. at 240, that the Commission would assume jurisdiction." *Public Utilities Com-*

*mission v. United States,* 355 U.S. 534, 538–39, 78 S.Ct. 446, 450, 2 L.Ed.2d 470 (1958). Here, as in *Public Utilities Commission v. United States, id.,* the Public Service Board has already assumed jurisdiction. The court is satisfied that the plaintiffs' case rests on its own footing on a proposition of federal law. The controversy is ripe and justiciable. Accordingly the court has jurisdiction under 28 U.S.C. § 1331 to hear the case.

## B. *Sovereign Immunity*

■ The defendants contend the court lacks jurisdiction over the case because the Eleventh Amendment "bars suits against members of the Vermont Public Service Board in their official capacities." Answer to First Amended Complaint, ¶ 14. This defense is of no avail to them.

The Public Service Board was initially impleaded as the sole defendant. The Town of Cavendish urged that sovereign immunity barred the suit. By order dated August 3, 1982, the court granted the plaintiffs leave to amend their complaint to substitute the individual members of the Board as parties defendant, since "the court decline[d] at [that] stage to dismiss the case for technical reasons without affording an opportunity to remedy the defect." *Town of Springfield v. State of Vermont Public Service Board,* No. 82–157, slip op. at 1 (D.Vt. Aug. 3, 1982).

There can be no doubt that the Eleventh Amendment is no bar to this suit in its present posture:

It is established that the Eleventh Amendment bars unconsented suits against state agencies as well as States, even where the relief sought is equitable in nature. *Alabama v. Pugh,* 438 U.S. 781 [98 S.Ct. 3057, 56 L.Ed.2d 1114] (1978) *(per curiam).* But it is equally well established, and it is a bulwark of our regime of rule by law, that courts have the power to restrain lawless conduct by government officials. *Ex parte Young,* 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1908); *Association of American Medical Colleges v. Carey,* 482 F.Supp. 1358,

1361–62 (N.D.N.Y.1980). Thus any suit seeking only equitable relief against state officials can be heard, provided the equitable relief does not in fact amount to retroactive damages, *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), if only individuals are named defendants, and if there is an allegation of conduct that violates state or federal law, *cf. Cory v. White,* —— U.S. ——, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).

*Town of Springfield v. State of Vermont Public Service Board, supra,* slip op. at 1.

The court now entertains some doubt as to whether the doctrine of sovereign immunity was a bar to this suit even in its original posture. *Cf. Mississippi Railroad Commission v. Illinois Central Railroad Co.,* 203 U.S. 335, 340, 27 S.Ct. 90, 92, 51 L.Ed. 209 (1906): "The first objection raised by the appellant is, that this suit is, in substance, one against a State. The commission was created by the State of Mississippi, under the authority of its constitution and laws, for the purpose of supervising, and to some extent controlling, the acts of railroads within the State. Such a commission is subject to a suit by a citizen [citing cases]." *Accord, Prentis v. Atlantic Coast Line,* 211 U.S. 210, 230, 29 S.Ct. 67, 71, 53 L.Ed. 150 (1908) (Holmes, J.) ("We may add that when the rate is fixed a bill *against the commission* to restrain the members from enforcing it will not be bad as an attempt to enjoin legislation or as a suit against a State, *and will be the proper form of remedy*") (emphasis added); *Murray v. Transit Commission,* 11 F.Supp. 27, 28–29 (S.D.N.Y.1935), *aff'd per curiam on opinion below,* 104 F.2d 1017 (2d Cir.1939) (L. Hand, Swan, and Chase, JJ.).

 In any event, this suit as it is now cast against the individual Public Service Board members is not within the proscription of the doctrine of sovereign immunity exemplified in the Eleventh Amendment. In the eyes of the law, illegal action by state officials is not the action of the State. "[T]he use of the name of the State to enforce an unconstitutional act to the injury of the complainants is a proceeding with-

out the authority of and one which does not affect the State in its sovereign or governmental capacity. It is simply an illegal act on the part of a state official . . . ." *Ex parte Young, supra,* 209 U.S. at 159, 28 S.Ct. at 453. Defendants' Eleventh Amendment defense is without merit.

### C. *Res judicata*

 The Public Service Board defendants and the Town of Cavendish urge that the Board's ruling is *res judicata,* and therefore cannot be collaterally attacked. Judge Coffrin, relying on *Durfee v. Duke,* 375 U.S. 106, 114, 84 S.Ct. 242, 246, 11 L.Ed.2d 186 (1963), rejected a similar argument in *Town of Springfield v. State of Vermont Environmental Board, supra,* 521 F.Supp. at 246–47. In *Durfee,* the Court recognized that "the general rule of finality of jurisdictional determinations is not without exceptions. Doctrines of federal pre-emption or sovereign immunity may in some contexts be controlling." *Durfee,* 375 U.S. at 114, 84 S.Ct. at 246, *citing Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), and *United States v. United States Fidelity Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940).

The Town of Cavendish contends that Judge Coffrin's reliance upon *Durfee* was "mistaken" because in neither of the two cases cited by the Court was the issue of subject matter jurisdiction actually litigated in the first tribunal. Intervenor's Memorandum of Law on Defenses Exclusive of Merits of the Plaintiffs' Claim, dated July 15, 1982, at 7, *citing Durfee, supra,* 375 U.S. at 114 n. 12, 84 S.Ct. at 247 n. 12.

The footnote the Town of Cavendish cites does not support its argument. After noting that in neither *Kalb v. Feuerstein, supra,* nor *United States Fidelity, supra,* was the jurisdictional issue actually litigated, that footnote goes on to set forth a multifactor test for exceptions to the finality of jurisdictional determinations:

The Restatement of Conflict of Laws recognizes the possibility of such exceptions:

"Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction. Among the factors appropriate to be considered in determining that collateral attack should be permitted are that

"(a) the lack of jurisdiction over the subject matter was clear;

"(b) the determination as to jurisdiction depended upon a question of law rather than fact;

"(c) the court was one of limited and not of general jurisdiction;

"(d) the question of jurisdiction was not actually litigated;

"(e) the policy against the court's acting beyond its jurisdiction is strong."

Durfee, supra, 375 U.S. at 114 n. 12, 84 S.Ct. at 247 n. 12, citing Restatement, Conflict of Laws [1st], § 451(2) (Supp.1948).

Even if the Public Service Board were a court, the application of this five-factor analysis to the case at hand would strongly indicate that the policy against permitting it to act beyond its jurisdiction outweighs the policy underlying the doctrine of res judicata. For the reasons given below, the Board's lack of jurisdiction is clear. The jurisdictional determination hinged entirely on a question of law, since it is undisputed that the Black River is a navigable river. The Board is certainly not a court of general jurisdiction. And the policy of federal preemption here is strong. The only factor militating in favor of deference to the Board's ruling is that the question of jurisdiction was actually litigated. Here, this is not enough.[5]

Moreover, the Public Service Board is not a court of limited jurisdiction. It is an administrative agency, albeit one with some quasi-judicial functions.[6] As Judge Coffrin

---

**5.** The Town of Cavendish cites the recent case of *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinea,* —— U.S. ——, —— n. 9, 102 S.Ct. 2099, 2104 n. 9, 72 L.Ed.2d 492 (1982), for the proposition that

[a] party that has had an opportunity to litigate the question of subject matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of *res judicata* apply to jurisdictional determinations—both subject matter and personal. See *Chicot County Drainage Dist. v. Bank,* 308 U.S. 371 [60 S.Ct. 317, 84 L.Ed. 329] (1940); *Stoll v. Gottlieb,* 305 U.S. 165 [59 S.Ct. 134, 83 L.Ed. 104] (1938).

*Insurance Corp. of Ireland* held that it did not violate due process to subject a foreign corporation to *in personam* jurisdiction as a sanction for failure to cooperate in discovery of facts relating to personal jurisdiction. The Court's statement quoted above is not inconsistent with the holding here. The principles of *res judicata* apply to jurisdictional determinations, but those principles include certain exceptions. On the very same day a unanimous Supreme Court held that "[t]he [federal district] court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is *res judicata* in a collateral action," *Chicot County Drainage Dist., supra,* 308 U.S. 371, 377, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940)

(citing *Stoll v. Gottlieb, supra*), that same unanimous Court held that, while "[i]t is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack [citing, *inter alia, Chicot County Drainage Dist., supra,* and *Stoll v. Gottlieb, supra*]," nonetheless, "Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally." *Kalb v. Feuerstein, supra,* 308 U.S. at 438–39, 60 S.Ct. at 345 (1940) (footnotes omitted). Similar federal preemption concerns dictate that the administrative ruling challenged here not be given conclusive *res judicata* value.

**6.** See *McFeeters v. Parker,* 113 Vt. 139, 143, 30 A.2d 300 (1943):

The public service commission is to be classed as an agency of the Legislature, and is not a court in the strict sense. *Trybulski v. Bellows Falls Hydro-Elec. Co.,* 112 Vt. 1, 7, 8, 20 A.2d 117, 120. As there said, omitting citations, "The public service commission is an administrative body, clothed in some respects with *quasi* judicial functions, authorized in the exercise of the police power to make rules and regulations required by the public safety and convenience and to deter-

noted in *Town of Springfield v. State of Vermont Environmental Board, supra,* "finality rules are further relaxed for agency rulings." *Id.* at 247, *citing Grose v. Cohen,* 406 F.2d 823, 824 (4th Cir.1969) (*"Res judicata* of administrative decisions is not encrusted with the rigid finality that characterizes the precept in judicial proceedings."). *Cf. United States v. California,* 403 F.Supp. 874, 900–01 (E.D.Cal.1975), *aff'd,* 558 F.2d 1347 (9th Cir. 1977), *rev'd on other grounds,* 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978).

▮▮▮ Where a state court exercises jurisdiction over a matter entrusted to exclusive federal jurisdiction, its judgment and any attempt to enforce the judgment may be "nullities subject to collateral attack." *Kalb v. Feuerstein, supra,* 308 U.S. at 439, 60 S.Ct. at 346 (footnote omitted) (state court proceedings involving the estate of a petitioner in bankruptcy held null and void, whether or not the issue of jurisdiction was actually litigated in the state court, *id.* at 444, 60 S.Ct. at 348). When a state administrative agency takes jurisdiction over a matter committed to exclusive federal jurisdiction, its rulings are likewise subject to collateral attack. The Public Service Board order here challenged is not *res judicata.*

### D. *The Anti-Injunction Act*

The Anti-Injunction Act, 28 U.S.C. § 2283, provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

Defendants contend this statute prohibits the court from granting declaratory relief voiding the already completed proceedings of a state administrative agency, the Public Service Board. While this initially implau-

sible contention has somewhat more substance to it than might appear on first look, in the last analysis, it must be rejected.

That the statute does not in terms bar declaratory relief makes no difference. Ordinarily, the practical effect of injunctive and declaratory relief will be the same. *Samuels v. Mackell,* 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971). A court that issues a declaratory judgment has the power to enforce it through "[f]urther necessary and proper relief," including an injunction. 28 U.S.C. § 2202.

The defendants argue that the fact that the Public Service Board is an administrative agency does not make the Anti-Injunction Act inapplicable. They contend that the Board, in issuing the declaratory ruling here challenged, was "sitting as a court." Memorandum Supporting Defendant's Application for a Preliminary Determination on the Issues of Jurisdiction, dated June 18, 1982, at 10. Their argument proceeds by analogy from two related but distinct legal doctrines.

▮▮▮ The first is the doctrine of administrative exhaustion announced in *Prentis v. Atlantic Coast Line, supra,* 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150. This doctrine requires would-be litigants in federal court seeking to challenge state administrative action to "make sure that the State in its final legislative action would not respect what they think their rights to be, before resorting to the courts of the United States." *Id.* at 230, 29 S.Ct. at 71. In *Prentis,* the Virginia State Corporation Commission set railroad rates, subject to review by the Virginia Supreme Court of Appeals. The Supreme Court, speaking through Justice Holmes, held that the Virginia Supreme Court of Appeals, in reviewing rates, was exercising a "legislative" rather than a judicial function. *Id.* at 227, 29 S.Ct. at 69. *Prentis,* thus, mandates a functional analysis as a part of the inquiry

---

mine facts upon which existing laws shall operate, and having in a sense, auxiliary or subordinate legislative powers which have been delegated to it by the General Assembly."

*See also Vermont Electric Power Co., Inc. v. Anderson,* 121 Vt. 72, 84, 147 A.2d 875 (1959).

into whether further state administrative action is required before a federal court should take jurisdiction.

■ The second doctrine on which the defendants rely is the rule that the Anti-Injunction Act does not bar injunctions against the administrative actions of a state court. This doctrine was also first set forth in *Prentis:* "Proceedings legislative in nature are not proceedings in a court within the meaning of [the Anti-Injunction Act], no matter what may be the general or dominant character of the body in which they may take place." *Id.* at 226, 29 S.Ct. at 69. Thus, where a state court exercises such nonjudicial powers as control over bar admissions, *Feldman v. Gardner,* 661 F.2d 1295 (D.C.Cir.1981), *petition for cert. filed,* 50 U.S.L.W. 3769 (Feb. 23, 1982); *Harris v. Louisiana State Supreme Court,* 334 F.Supp. 1289, 1299 (E.D.La.1971); approving an Indian's conveyance of land, *Armstrong v. Maple Leaf Apartments, Ltd.,* 508 F.2d 518 (10th Cir.1975); or declaring election returns, *Roudebush v. Hartke,* 405 U.S. 15, 21, 92 S.Ct. 804, 808, 31 L.Ed.2d 1 (1972), the Anti-Injunction Act does not apply.

The defendants urge that when a state administrative agency acts in a judicial capacity, the Anti-Injunction Act should preclude federal court interference. As the plaintiffs correctly point out, this was a question expressly pretermitted in *Prentis, supra,* 211 U.S. at 224–26, 29 S.Ct. at 68–9. In *Prentis,* the Court noted that the Virginia State Corporation Commission had the "power to enforce compliance with its order by adjudging and *enforcing, by its .own appropriate process,* against the offending company the fines and penalties established

by law." *Id.* at 225, 29 S.Ct. at 69 (emphasis added). The Court went on to "assume, without deciding, that, if it was proceeding against the appellees *to enforce the order and to punish them for a breach,* it then would be sitting as a court and would be protected from interference on the part of the courts of the United States." *Id.* at 226, 29 S.Ct. at 69 (emphasis added).

■ The court finds it unnecessary to address this assumption, expressly left undecided in *Prentis* and undecided since. *Cf. Gibson v. Berryhill,* 411 U.S. 564, 573 n. 12, 93 S.Ct. 1689, 1695 n. 12, 36 L.Ed.2d 488 (1973); *Delaware Coach Co. v. Public Service Commission,* 265 F.Supp. 648, 652 (D.Del.1967). For the court concludes that, assuming the bar of the Anti-Injunction Act may prevent federal court interference against some quasi-judicial proceedings of state administrative agencies, unless those proceedings are *in rem* the state administrative agency must, at the least, have the power to enforce its own orders for the agency to be deemed a "court" within the meaning of the Act. "A judicial inquiry investigates, declares, *and enforces* liabilities as they stand on present or past facts and under laws supposed already to exist." *Prentis, supra,* 211 U.S. at 226, 29 S.Ct. at 69 (emphasis added).[7] "The nature of the final act determines the nature of the previous inquiry." *Id.* at 227, 29 S.Ct. at 69.

■ That the Vermont Public Service Board may have certain judicial powers, and may observe all the refinements of courtroom procedure, does not alter the fact that it lacks the power to enforce its own orders. By Vermont law, the Public Service Board must apply to the Vermont Su-

---

7. In *Prentis,* Chief Justice Fuller concurred in the result but dissented from the opinion. He would have held that the Virginia State Corporation Commission was a "court," and, consequently, the Anti-Injunction Act would bar the relief sought. In reaching this conclusion, he considered the following powers of the Corporation Commission important:

It issued, executed *and enforced* its own writs and processes; it could issue *and enforce* writs of mandamus and injunction; it punished for contempt ... *and its judgments, decrees and orders had the same force*

and effect as those of any other court of record in the State, and were enforced by its own proper processes. *It was not subject to restraint by any other state court,* and from any and every ruling or decision by it an appeal lay to the Supreme Court of Appeals of the State ... and pending the decision of such appeal the order appealed from *might* by a supersedeas be *suspended* in its operation ....

*Prentis, supra,* at 233, 29 S.Ct. at 72 (opinion of Fuller, C.J., concurring in the judgment, dissenting from the opinion) (emphasis added).

preme Court to enforce its orders. 30
V.S.A. § 15. And although " '[o]rdinarily,
when properly applied for, a mandate to
enforce such an order would issue almost as
a matter of course,' " the Supreme Court
will refuse to enforce the order if it repre-
sents an abuse of discretion or if the
Board's powers were not exercised accord-
ing to law or in a manner that injures
property rights unjustly. *McFeeters v.
Parker,* 113 Vt. 139, 144, 30 A.2d 300 (1943),
*quoting from West Rutland v. Rutland Ry.
Light and Power Co.,* 98 Vt. 508, 511, 129 A.
303 (1925).[8]

Defendants submit that the fact that the
Public Service Board must apply to the
Vermont Supreme Court for enforcement
of its orders is irrelevant, since "[a] pro-
ceeding before the Vermont Supreme Court
would clearly be a 'State court proceeding'
within the purview of the Act." Defend-
ant's Reply to Plaintiffs' Memorandum on
the Issues of Jurisdiction Raised in Defend-
ant's Application for a Preliminary Deter-
mination, dated July 23, 1982, at 4. A
unanimous Supreme Court rejected a simi-
lar argument, advanced in a case decided
two years before *Prentis* and analogous to
the instant case:

It is also objected that an injunction
will not lie from a United States court to
stay proceedings in a state court, because
of the provisions of [the Anti-Injunction
Act]. The [Mississippi Railroad] [C]om-
mission is, however, not a court, and is a
mere administrative agency of the State,
as held by the Mississippi court.

It is urged, however, that proceedings
in a state court were commenced by the
presentation of the petition of the citizens
of Magnolia to the railroad commission,
and because the commission, having made
an order to stop the trains, would have to
resort to the proper state court to aid it
in the enforcement of its order, therefore
the whole proceeding must be regarded
as in a state court from the commence-
ment. Whatever may be the provision of
the state statute in regard to the enforce-
ment solely by the state court of the

order of the railroad commission, the pro-
ceeding while before the commission nev-
er thereby became a proceeding in a state
court, and the jurisdiction of the Federal
court to enjoin the commission from the
enforcement of its order, because such
order was a violation of the Federal Con-
stitution, was not in the least affected.
*Mississippi Railroad Commission v. Illinois
Central Railroad Co., supra,* 203 U.S. 335,
341, 27 S.Ct. 90, 93, 51 L.Ed. 209 (1906)
(citations omitted) (Peckham, J., for a unan-
imous Court). *Cf. Hill v. Martin,* 296 U.S.
393, 402 and n. 14, 56 S.Ct. 278, 282 and n.
14, 80 L.Ed. 293 (1935).

Policy, as well as precedent, supports this
interpretation of the Anti-Injunction Act.
Where a state chooses to confer a part of its
judicial business on an administrative agen-
cy and grants the agency the power to
enforce its own orders, it makes that agen-
cy a part of the state's judicial apparatus.
The same considerations of comity between
parallel judicial systems that underlie the
Anti-Injunction Act's bar against federal
court interference with state court proceed-
ings militate against interference with the
agency's proceedings. Where a state re-
serves to its courts the power to enforce an
agency's orders, the state court system re-
tains a certain power of oversight over the
agency. As already mentioned, in Ver-
mont, the state Supreme Court will not
enforce an order of the Public Service
Board that it concludes represents an abuse
of discretion. *McFeeters v. Parker, supra,*
113 Vt. at 144–45, 30 A.2d 300. For the
federal courts to share this power of over-
sight creates no unseemly intrusion into a
parallel judicial system. This shared re-
sponsibility for oversight is but an incident
of the concurrent obligation of state and
federal courts to enforce state and federal
law.

■ If aggrieved with a final state ad-
ministrative order such as that at issue
here, a party with a claim of federal right
may pursue state remedies, or may elect to
proceed at once to the courts of the United

**8.** *See* footnote 6, *supra.*

States to enjoin the enforcement of the order. *Bacon v. Rutland Railroad Co.,* 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914) (Holmes, J., for a unanimous Court) (held, party aggrieved by order of the predecessor of the Vermont Public Service Board could seek equitable relief in the United States District Court for the District of Vermont in lieu of an appeal to the Vermont Supreme Court). The choice of forum belongs to the plaintiff.

At least where the state has drawn a line between state court and state administrative agency by denying the latter the power to enforce its own orders, and if the state administrative agency is not exercising *in rem* jurisdiction, the Anti-Injunction Act does not bar a federal court from enjoining enforcement of the state agency's order. Whether and under what circumstances the Anti-Injunction Act does prevent a federal court from issuing injunctive relief against a state administrative agency that possesses the power to enforce its orders is a question that need not be decided here.

Defendants seek to rely on *Prouty v. Citizens Utility Co.,* 257 F.2d 692 (2d Cir. 1958), *cert. denied,* 358 U.S. 867, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958), a case they allege is "in all material respects, identical" to this case. *Prouty,* however, "rest[ed] on a principle of narrow compass," *id.,* 257 F.2d at 694:

> Necessary to the harmonious cooperation of federal and state tribunals is the well recognized rule that the court first assuming jurisdiction over property may maintain and exercise its jurisdiction to the exclusion of the other. The petition for condemnation was a proceeding *in rem,* where the state tribunal must control the property to give effect to its jurisdiction.

*Id.* (footnote omitted). Since in this case the Public Service Board has not exercised *in rem* jurisdiction, *Prouty* is inapposite to the Anti-Injunction Act issue here.

It is one matter to say that when a state court exercises administrative functions, the Anti-Injunction Act does not apply, *see Feldman v. Gardner, supra;* it is entirely another matter to conclude that an agency

exercising certain quasi-judicial powers thereby is a "court" protected by that Act. The Public Service Board lacks the power of enforcement. It exercises narrow, "special and statutory powers not according to the common law, as to which nothing will be presumed in favor of its jurisdiction." *McFeeters v. Parker, supra,* 113 Vt. at 144, 30 A.2d 300. "The courts have power to prevent an abuse of discretion" by the Board, *id.,* and if circumstances justify equitable relief, "the court of chancery will afford a remedy." *Id.* at 145, 30 A.2d 300. Because the Public Service Board is an agency that lacks the power to enforce its order and was not exercising *in rem* jurisdiction in the ruling here collaterally attacked, the Anti-Injunction Act does not apply, and this court shares with the courts of Vermont the power to restrain the Board's proceedings in an exclusively federal domain outside its proper jurisdiction.

### E. *Principles of Equity, Comity, and Federalism*

■ Defendants request that this court abstain from deciding this case for reasons of equity, comity, and federalism. These principles are generally identified with *Younger v. Harris, supra,* and its progeny, but the doctrine of equitable restraint underlying the *Younger* decision has long been applied to both criminal and certain civil proceedings. *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); *cf. Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–05, 95 S.Ct. 1200, 1207–09, 43 L.Ed.2d 482 (1975). The Supreme Court has recently applied the *Younger* doctrine to preclude federal court interference with pending state enforcement actions in which important state interests in the efficient functioning of the state judicial system or other important state policies are at stake. *Middlesex County Ethics Committee v. Garden State Bar Association,* —— U.S. ——, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (disciplinary proceedings against a lawyer brought by a state agency under the control of the state supreme court); *Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994

(1979) (emergency custody litigation initiated by the State to protect children from parental abuse); *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (attachment proceedings to recover money fraudulently obtained through state welfare programs); *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (civil contempt proceedings essential to effectuate state court judgments); *Huffman v. Pursue, Ltd., supra,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (public nuisance proceedings initiated by the State).

The proceeding before the Public Service Board was not a state enforcement proceeding, but, rather, was initiated by the Town of Cavendish. Cavendish sought to protect environmental, aesthetic, historical preservation, and economic values, and such other values as "the traditional attachment to home and hearth in Vermont." *See Petition of the Town of Cavendish,* P.S.B. Docket No. 4444, document submitted by Cavendish entitled Scope of Project, filed April 2, 1980, at 2. While these concerns are all important to Vermonters, it cannot escape comment that the Town of Cavendish balanced these values somewhat differently than did the Town of Springfield. Both appeared before the Board essentially as private parties. Both sought to influence the course of the Board's administrative actions. In short, because the proceeding before the Board was begun by a municipality to protect chiefly local interests, and the Vermont courts were not involved at any stage, the two principal reasons for *Younger v. Harris* abstention—deference to a State's efforts to enforce important state policies, and respect for the integrity of the state judicial system, *cf. Huffman v. Pursue, Ltd., supra,* 420 U.S. at 608–09, 95 S.Ct. at 1210—are present here in attenuated form.

▪ To be sure, Cavendish's application to the Public Service Board resulted in the Board's taking jurisdiction over the Town of Springfield's hydroelectric project, and the court is certain that the Board, in exercising that jurisdiction, would desire to enforce policies of importance to the people of Vermont. But the customary deference to state enforcement efforts is suspended when, as in the instant case, the plaintiffs' challenge is that those efforts are preempted under the Supremacy Clause. As Judge Friendly has written, "abstention is peculiarly inappropriate when the federal claim is that the state has been ousted from jurisdiction." *Chemical Specialties Manufacturers Association, Inc. v. Lowery,* 452 F.2d 431, 433 (1971). Although Judge Friendly was not referring specifically to *Younger v. Harris* abstention, his reasoning applies here in full force. "[W]here the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right." *Public Utilities Commission v. United States, supra,* 355 U.S. at 540, 78 S.Ct. at 451. *See also Public Utilities Commission v. United Fuel Gas Co.,* 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943); *cf. People v. King,* 463 F.Supp. 749, 751 (D.Nev.1979) (dictum) ("Thus, there is no question that King could have brought an action for declaratory relief against the State in this Court. And, there is no question that, had he done so under the Commerce Clause and preemption theories which he asserts here, this Court would have original jurisdiction over the matter and abstention would be inappropriate.").

In *Bacon v. Rutland Railroad Co., supra,* the Supreme Court unanimously rejected the argument of the Public Service Board's predecessor that until the complainant "had taken the appeal from the order [of the Public Service Commission] to the Supreme Court of the State that is provided by [the predecessor statutes to current 30 V.S.A. §§ 12, 14], it ought not to be heard to complain elsewhere." *Id.,* 232 U.S. at 136–37, 34 S.Ct. at 283. Justice Holmes, writing for the Court, repeated the teaching of *Prentis, supra,* that "at the judicial stage," the plaintiff "had a right to resort to the courts of the United States at once." *Bacon, supra,* at 137, 34 S.Ct. at 284. *Bacon v. Rutland Railroad Co.* remains good law. *See Huffman v. Pursue, Ltd., supra,* 420

U.S. at 610 n. 21, 95 S.Ct. at 1211 n. 21. Accordingly, principles of equity, comity, and federalism do not preclude this court from proceeding to the merits of the plaintiffs' case, especially since plaintiffs' challenge to the Public Service Board's order is predicated on the Supremacy Clause and federal preemption.

## II. THE MERITS

As the Public Service Board majority recognized in *Petition of the City of Winooski,* P.S.B. Docket No. 4606 (Jan. 14, 1982), a long line of cases has held that federal jurisdiction over the licensing of hydroelectric projects on navigable waters of the United States preempts state licensing authority. *Id.,* slip op. at 2–3, *citing, inter alia, First Iowa Hydro-Electric Cooperative v. Federal Power Commission,* 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946); *Federal Power Commission v. Oregon,* 349 U.S. 435, 75 S.Ct. 832, 99 L.Ed. 1215 (1955); *Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958); *Washington Dept. of Fish and Game v. Federal Power Commission,* 207 F.2d 391 (9th Cir. 1953), *cert. denied,* 347 U.S. 936, 74 S.Ct. 626, 98 L.Ed. 1087 (1954); *Town of Springfield v. State of Vermont Environmental Board, supra; Citizens Utilities Co. v. Prouty,* 122 Vt. 443, 176 A.2d 751 (1961), *cert. denied,* 369 U.S. 838, 82 S.Ct. 867, 7 L.Ed.2d 842 (1962); *In re Bellows Falls Hydro-Electric Corp.,* 114 Vt. 443, 47 A.2d 409 (1946). "All of this precedent notwithstanding," the majority wrote, "it appears to us that the United States Supreme Court, which is the ultimate authority on matters of federal preemption, has, by a recent decision, signaled its rejection of *First Iowa* and all of its progeny." *Petition of Winooski, supra,* slip op. at 3, *citing California v. United States,* 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978). In the declaratory ruling challenged in this case, *Petition of the Town of Cavendish, supra,* the Public Service Board found the issue "identical" to that in *Petition of Winooski,* and "adhere[d] to the views expressed in the majority opinion therein." *Petition of Cavendish, supra,* slip op. at 4.

■ The question for decision is thus whether the Supreme Court has in *California v. United States, supra,* implicitly overruled *First Iowa.* The short answer to this question is that it has not. Six weeks after the Public Service Board issued its ruling in *Petition of Winooski, supra,* and six weeks before it ruled in *Petition of Cavendish, supra,* a unanimous Supreme Court cited *First Iowa* with approval for the proposition that "New Hampshire's purported 'ownership' of the Connecticut River ... provides no justification for restricting or conditioning the use of these federally-licensed [hydroelectric] units." *New England Power Co. v. New Hampshire,* 455 U.S. 331, —— n.6, 102 S.Ct. 1096, 1100 n.6, 71 L.Ed.2d 188 (1982).

In *California v. United States,* the Supreme Court dealt with a statute distinct in both purpose and history from that at issue in *First Iowa. First Iowa* had examined federal preemption of the licensing of hydroelectric projects, and construed § 27 of the Federal Power Act, now codified at 16 U.S.C. § 821. *California v. United States* explored state and federal authority over federal reclamation projects, and interpreted § 8 of the Reclamation Act of 1902, codified at 43 U.S.C. §§ 372, 383. Notwithstanding some similarity in the wording of the statutes, they serve different objectives, and relate to federal actions fundamentally dissimilar in nature.

Section 27 of the Federal Power Act provides:

> Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.

16 U.S.C. § 821.

In *First Iowa,* the Supreme Court construed this statute as being "limited to laws as to the control, appropriation, use or distribution of water in irrigation or for municipal or other uses of the same nature."

*Id.,* 328 U.S. at 175–76, 66 S.Ct. at 917. The Court rejected an interpretation of § 27 that would have preserved concurrent state jurisdiction over the licensing of hydroelectric plants on navigable waters. *Id.* at 178–81, 66 S.Ct. at 918. It stressed that the Federal Power Act created an "integration" rather than a "duplication" of federal and state jurisdictions. *Id.* at 176, 66 S.Ct. at 917. Certain matters, such as irrigation, were left to the States to regulate, provided such regulation was not inconsistent with federal law. *Id.* at 174–75 and n. 19, 66 S.Ct. at 916 and n. 19. Other matters, such as hydroelectric plant licensing, were left exclusively to the Federal Government. Thus, "without setting up a divided authority over any one subject," both the States and the Federal Government were given a voice in the regulatory plan. *Id.* at 174, 66 S.Ct. at 916 (footnote omitted).

Concurrent jurisdiction over licensing was impermissible, the Court held:

> A dual final authority, with a duplicate system of state permits and federal licenses required for each project, would be unworkable. "Compliance with the requirements" of such a duplicated system would be impossible in some cases and probably difficult in most of them.

*Id.* at 168, 66 S.Ct. at 913 (footnote omitted). Because "[t]he detailed provisions of the Act providing for the federal plan of regulation leave no room or need for conflicting state controls," concurrent state licensing up to the point of veto was condemned along with the clearly improper "veto power over the federal project" that the power to withhold a state permit implies. *Id.* at 181, 66 S.Ct. at 919 (footnote omitted), 164, 66 S.Ct. at 911. In the licensing stage, federal law covers the field.[9]

Section 9(b) of the Federal Power Act, 16 U.S.C. § 802(b), requires the applicant for a Federal Energy Regulatory Commission (FERC) license to submit "satisfactory evidence" of compliance with state laws relating to the use of water for power purposes. But this subsection "does not itself require compliance with any state laws." *First Iowa, supra,* 328 U.S. at 177, 66 S.Ct. at 918. It is merely a "suggestion to [FERC] of subjects as to which [it] may wish to have some proof submitted to it of the applicant's progress." *Id.* at 177–78, 66 S.Ct. at 918. FERC may wish to see proof of "the sufficiency of the legal title of the applicant to its riparian rights, or as to the validity of its local franchises, if any, relating to proposed intrastate public utility service." *Id.* at 178, 66 S.Ct. at 918. As Judge Coffrin noted in the *Environmental Board* case, "the import of [§ 9(b) and regulations implementing it] leaves no doubt that it is the function of FERC, to the exclusion of the [Environmental] Board and any other state agencies, to act on behalf of the people of Vermont, as well as all others, to ensure that the interests of all concerned are adequately protected." *Town of Springfield v. State of Vermont Environmental Board, supra,* 521 F.Supp. at 250.

---

**9.** As Public Service Board member Bloomberg pointed out in dissent in *Petition of Winooski:*

> A federal license is a comprehensive and detailed document. Directly or by reference to the parties' exhibits, it specifies the size, location and design of the dam, penstocks, powerhouse, generators and other equipment. It further specifies operating conditions, minimum releases, safety requirements, access routes and recreational facilities; and it mandates provisions for the protection of fish and other wildlife, historic sites and the natural environment generally. Moreover, the federal authorities maintain continuing jurisdiction over the project, and may alter the terms of the license or may revoke it if the project is not operated according to its requirements. Because the federal agency is charged with a concern for the financial liability of the project, it must also be presumed that the various conditions imposed by the license constitute the maximum limits consistent with the project's economic health.
>
> There are therefore, virtually no conditions that a local authority could impose that would not be inconsistent with the terms of the federal license. At best, only the most trivial specifications could be required, a result which cannot justify the effort, expense and time required for the Board's review of major generating projects. It would be completely pointless for the Board to act with its powers thus restricted.

*Petition of Winooski, supra,* dissenting opinion of Samuel S. Bloomberg, slip op. at 5–6.

■ In *California v. United States, supra,* the Supreme Court held that § 8 of the Reclamation Act of 1902, 43 U.S.C. § 383, requires the Secretary of the Interior to comply with state water law, including any law requiring the obtaining of a state permit, in carrying out federal reclamation projects, unless the state law is clearly inconsistent with a Congressional directive. The statute at issue in the case provides:

Nothing in sections 372, 373, 381, 383, 391, 392, 411, 416, 419, 421, 432, 434, 439, 461, 491 and 498 of this title shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of such sections, shall proceed in conformity with such laws, and nothing in such sections shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof.

43 U.S.C. § 383.

Justice Rehnquist's opinion for the Court begins with a detailed history of federal and state involvement in the reclamation of the arid lands of the Western States. The lessons of history were important to the Court because

the situations invoking the application of [principles of comity and federalism] have contributed importantly to their formation. Just as it has been truly said that the life of the law is not logic but experience, see O. Holmes, The Common Law 1 (1881), so may it be said that the life of the law is not political philosophy but experience.

*California v. United States, supra,* 438 U.S. at 648, 98 S.Ct. at 2987. The federal experience in reclaiming the arid lands of the West has been that there is a need for uniformity in the regulation of water rights. Rather than create a uniform federal water law from scratch, or create a

system of dual rights that would inevitably result in "legal confusion ... if federal water law and state water law reigned side by side in the same locality," *id.* at 669, 98 S.Ct. at 2998. Congress elected to pursue uniformity by deferring to state regulation. *See id.* at 665–70, 98 S.Ct. at 2996–98. The Supreme Court concluded from amply chronicled legislative history that, in impounding water to be used in a federal reclamation project, the Secretary of the Interior must comply with state water law, including the requirement of obtaining a state permit for appropriation of water, if needed, and satisfying any conditions attached to the permit which are not inconsistent with federal law. *Id.* at 647, 98 S.Ct. at 2987.

If there is one theme that runs through both *First Iowa* and *California v. United States,* it is that duplicative regulation is to be avoided. Both the States and the Federal Government have roles to play in regulating the use of our Nation's waters, but their roles are different. The States have been given primary jurisdiction over proprietary rights in water. Local regulation is appropriate because of the legal and geographical differences between the arid Western States, where the doctrine of prior appropriation generally prevails and water rights are subject to strict state regulation, and the Eastern States, where water rights are governed by the doctrine of riparian rights and an abundance of water obviates the need for complex state water distribution plans. On the other hand, the Federal Government has taken exclusive jurisdiction over the licensing of hydroelectric projects on navigable waters. It has established a specialized federal agency, the Federal Energy Regulatory Commission, which has the expertise to evaluate such projects in light of "comprehensive" criteria. *Cf.* 16 U.S.C. § 803(a); *Town of Springfield v. State of Vermont Environmental Board, supra,* 521 F.Supp. at 249–50. That agency's control over the licensing of hydroelectric projects on navigable waters of the United States is plenary. The proper means by which the Public Service Board and the Town of Cavendish may make sure that

their concerns are taken into account in the construction of the hydroelectric plant the plaintiffs propose to build is to appear before the FERC as parties, as they have a right to do, *see* 18 C.F.R. § 1.8, rather than to subject the plaintiffs to duplicative, and possibly conflicting, regulation.

In sum, *California v. United States* does not implicitly overrule *First Iowa*. The two cases are consistent. Both recognize the need for a uniform system of regulation in which the States perform certain functions and the Federal Government performs other functions. While the Vermont Public Service Board may eventually have jurisdiction over certain aspects of the Black River hydroelectric project, such as rate-setting, it is without jurisdiction over the licensing and approval of the project.

It is DECLARED and ADJUDGED that, under the Federal Power Act and the Supremacy Clause, the jurisdiction of the Federal Energy Regulatory Commission to act on the plaintiffs' application for a license to develop the proposed Black River hydroelectric project is exclusive of the jurisdiction assumed by the majority of the members of the Vermont Public Service Board over the improvements, works, facilities, features, and elements of the Black River project within the plaintiffs' application to FERC for a license for the project. Accordingly, the order entered by the Public Service Board on April 7, 1982, and filed on April 8, 1982, in *Petition of the Town of Cavendish,* P.S.B. Docket No. 4444, exceeds its jurisdiction, and is without legal force and effect. Since no disputed issue of fact is presented, the plaintiffs' motion for summary judgment is GRANTED.

It is so ORDERED.