**TOWN OF SPRINGFIELD, VERMONT and Vermont Public Power Supply Authority**

v.

**STATE OF VERMONT ENVIRONMENTAL BOARD,**

**Concerned Citizens of the Black River Valley and Town of Cavendish, Defendants Intervenors.**

Civ. A. No. 81–62.

United States District Court, D. Vermont.

Aug. 21, 1981.

---

John Parker, Parker, Lamb & Ankuda, Springfield, Vt., Richmond F. Allan, Duncan, Weinberg & Miller, Washington, D. C. and John D. Paterson, Paterson, Gibson, Noble & Goodrich, Montpelier, Vt., for plaintiffs.

Merideth Wright, Asst. Atty. Gen., Montpelier, Vt., for defendant.

Stephen A. Reynes, Niles & Gibbs, Woodstock, Vt., for defendant intervenor Concerned Citizens of the Black River Valley.

Sarah E. Vail, Chester, Vt., for defendant intervenor Town of Cavendish.

COFFRIN, District Judge.

This is an action brought under 28 U.S.C. § 1331 for declaratory and injunctive relief against the State of Vermont Environmental Board (Board). The Board entered an order on January 19, 1981 barring the Town of Springfield (Town) from proceeding with certain portions of a hydroelectric project until a state land use permit is obtained. The Town and the Vermont Public Power Supply Authority, which is participating with the Town in the project, now seek a declaration that the order is illegal and void on the ground that exclusive jurisdiction over the permit and license process for hydroelectric projects rests in the Federal Energy Regulatory Commission (FERC) under the Federal Power Act.[1]

---

1. The Act originally vested administrative responsibility in the Federal Power Commission. Section 4, 16 U.S.C. § 797. As part of the creation of the Department of Energy, however, the hydroelectric licensing functions of the Federal Power Commission were transferred to FERC within the Department. Energy

Presently before the court is plaintiffs' motion for summary judgment. Also pending is defendant's motion to dismiss the complaint. Defendant asserts that plaintiffs are barred by res judicata or collateral estoppel from relitigating the question of whether the Board has jurisdiction over this matter. Additionally, defendant argues that we should abstain from hearing this case until the Vermont Supreme Court rules on the extent to which the requirements of Act 250 apply to a project falling within FERC jurisdiction. The Town of Cavendish, Vermont and the Concerned Citizens for the Black River Valley (CCBRV) have been permitted to intervene to oppose plaintiffs' motion for summary judgment and to urge dismissal of plaintiffs' complaint. In addition to the arguments for dismissal advanced by defendant, the Town of Cavendish moves to dismiss the complaint on the grounds that the matter does not present a justiciable controversy and that the court lacks jurisdiction under 28 U.S.C. § 1331. CCBRV also moves for declaratory judgment in favor of defendant intervenors.

For the reasons set forth below, we deny the various motions to dismiss plaintiffs' complaint and CCBRV's motion for declaratory judgment. We grant plaintiffs' motion for summary judgment.

## FACTUAL BACKGROUND

Plaintiffs have applied to FERC for a license to construct and operate a series of six hydroelectric generating facilities on the Black River in the Springfield area. FERC exercised its jurisdiction over the project and is now considering the application. In addition to those aspects directly related to the generation of electricity, the Black River project encompasses the relocation of approximately 5.5 miles of state highway adjacent to the river which will be inundated when the project is completed and the development of recreation areas in the project vicinity, including two boat launches, a roadside park, and a trail system around the project area perimeter. The road relocation and recreational improvements will involve more than ten acres of land.

Pursuant to Vermont's "Act 250," Vt. Stat.Ann. tit. 10, chap. 151, a developer must secure a land use permit from the Board or a district environmental commission for commercial or industrial development on any tract of land greater than ten acres. Following a request to the Board for a declaratory ruling on the applicability of the Act 250 requirements to the Black River project, the Board held that the Town must obtain a land use permit before proceeding with the relocation of the highway and the development of the recreational areas.[2] As a concomitant to this ruling, the Board concluded that its jurisdiction was concurrent with FERC jurisdiction with respect to "corollary improvements that are not 'used or useful' in connection with the generation of electricity by the hydroelectric facility." Although the Town participated in the Board proceedings and briefed the issue of the Board's jurisdiction in that forum, the Town did not appeal the Board's ruling to the Vermont Supreme Court as it arguably might have pursuant to the judicial review provision of the Vermont Administrative Procedure Act, Vt.Stat.Ann. tit. 3, § 815.

## DISCUSSION

### I. Motions to Dismiss

The doctrines of res judicata and collateral estoppel, requiring that a party be given only one day in court serve to further the public policies of finality of judgments and repose to litigants. The general rule of finality is no different when the claim is made that the original forum

Organization Act of 1977, § 402(a)(1)(A), Pub. L. No. 95–91, 91 Stat. 565.

**2.** Although Act 250 exempts from its permit requirements those electric generation projects which require certificates of public good from the Vermont Public Service Board, Vt.Stat.Ann. tit. 10, § 6001(3), the Environmental Board held that the exemption does not extend to recreation facilities and other improvements which are part of the project but which are not directly involved in power generation.

did not have jurisdiction over the subject matter of the controversy. *Durfee v. Duke,* 375 U.S. 106, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963). Where the policies underlying application of the doctrines are outweighed by more significant considerations, however, the courts have not adhered to the finality that would otherwise be given to a prior decree. *See id.* at 114, 84 S.Ct. at 246; *Hooper v. United States,* 326 F.2d 982, 985 (Ct.Cl.1964), *cert. denied* 377 U.S. 977, 84 S.Ct. 1882, 12 L.Ed.2d 746 (1964). The finality rules are further relaxed for agency rulings. As the Fourth Circuit noted in *Grose v. Cohen,* 406 F.2d 823, 824–25 (1969):

> *Res judicata* of administrative decisions is not encrusted with the rigid finality that characterizes the precept in judicial proceedings .... Application of the doctrine often serves a useful purpose in preventing relitigation of issues administratively determined, ... but practical reasons may exist for refusing to apply it, [citations omitted].

■ We are convinced that res judicata or collateral estoppel should not attach here to the Board's ruling. The Supreme Court has recognized that the general rule of finality of jurisdictional determinations may yield to overriding considerations such as federal preemption. *Durfee,* 375 U.S. at 114, 84 S.Ct. at 246, citing *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). In *Kalb,* the Court held that a state court decree foreclosing a farm mortgage was void and subject to collateral attack in view of federal legislation which gave the federal bankruptcy courts exclusive jurisdiction over farmer-debtors and their property and withdrew from all other courts the power to maintain and enforce foreclosure proceedings against them. Other courts have reached the result suggested in *Durfee. See United States v. State of Ohio,* 487 F.2d 936 (Em.App.1973), *aff'd sub. nom. Fry v. United States,* 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975), *cert. denied,* 421 U.S. 1014, 95 S.Ct. 2422, 44 L.Ed.2d 683 (1975) (national scope of the Economic Stabilization Act, its underlying policy, and the doctrine of federal preemption negates giving any res judicata effect

to a state court judgment which intrudes upon the exclusive jurisdiction given to the federal courts by the act); *Monongahela Connecting R. Co. v. Pennsylvania Public Utilities Commission,* 373 F.2d 142 (3d Cir. 1967), *rev'g* 253 F.Supp. 50 (W.D.Pa.1966) (railroad company, faced with an order by the Pennsylvania Public Utilities Commission requiring the company to install air brakes on its cars, was entitled to have the issues of federal occupation and preemption by the Federal Safety Appliance Act determined in the federal courts irrespective of whether these issues were passed upon by the P.U.C. or the Pennsylvania courts). The common thread of these decisions is present here. The issue of whether the Board's ruling intrudes upon the exclusive jurisdiction given to FERC under the Federal Power Act is an important federal question which plaintiffs are entitled to litigate in federal court notwithstanding the Board's own determination that its jurisdiction is concurrent with FERC jurisdiction.

■ The gravity of the federal preemption issue also compels us to reject defendant's contention that we should stay our hand, under the abstention doctrine, until plaintiffs have exhausted their state appellate remedies. Under this doctrine, the federal court, in its discretion and in the interests of comity and federalism, may refuse to decide the merits of a complaint raising a federal question until after the complainant has exhausted his appeals at the state level. Although the Town here apparently never perfected an appeal from the Board's ruling, defendant correctly points out that if the Town had the option to appeal in state court at the time it filed this action, it may not avoid the strictures of the exhaustion requirement by simply failing to comply with the procedures for perfecting its appeal. *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 611 n.22, 95 S.Ct. 1200, 1211 n.22, 43 L.Ed.2d 482 (1975); *Stivers v. State of Minnesota,* 575 F.2d 200, 204 (8th Cir. 1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 88 (1979); *Lamb Enterprises, Inc. v. Kiroff,* 549 F.2d 1052, 1058 n.5 (6th Cir. 1977), *cert. denied,* 431 U.S. 968, 97 S.Ct.

2927, 53 L.Ed.2d 1064 (1977). It is not altogether clear, however, whether the Town could have appealed the Board's ruling immediately or whether the Town would have to await the outcome of an application for an Act 250 permit before it could appeal. *See* Vt.Stat.Ann. tit. 3, § 815(a), requiring that appeal be had only from a final agency decision. In any event, the Supreme Court has not insisted upon exhaustion of the state judicial remedy in the face of a challenge to the jurisdiction of a state agency on the ground of repugnancy to a federal regulatory scheme. *See Public Utilities Commission of Ohio v. United Fuel Gas Co.*, 317 U.S. 456, 63 S.Ct. 369, 87 L.Ed. 396 (1943); *Public Utilities Commission of California v. United States*, 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). As Judge Friendly stated in *Chemical Specialties Manufacturers Association, Inc. v. Lowery*, 452 F.2d 431, 433 (2d Cir. 1971):

> We cannot accept the district court's suggestion that this is an appropriate case for invoking the doctrine of abstention. The Supreme Court has recently observed that the "abstention cases have dealt with unresolved questions of state law which only a state tribunal could authoritatively construe." *Wisconsin v. Constantineau*, 400 U.S. 433, 438, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971) (citation omitted). Here there is no uncertainty with respect to the City Regulations that would call for construction by the state courts in the first instance. As will be seen, such difficulties in statutory construction as exist pertain rather to the relevant federal laws, and a federal court is better equipped to deal with these. Indeed, abstention is peculiarly inappropriate when the federal claim is that the state has been ousted from jurisdiction.

For the same reasons listed by Judge Friendly, we refuse to invoke the doctrine of abstention to dismiss plaintiffs' complaint.

■ We also reject the additional arguments for dismissal advanced by the Town of Cavendish. At the moment the Board issued its order barring plaintiffs from acting on portions of the Black River project without an Act 250 permit, a challenge to the validity of this order was sufficiently concrete to present a justiciable controversy. Moreover, it cannot seriously be doubted that the federal preemption issue here "arises under the Constitution, laws, or treaties of the United States" so as to establish federal question jurisdiction under 28 U.S.C. § 1331. To the extent that counsel for Cavendish urges that the amount in controversy is insufficient to supply jurisdiction under section 1331, it is only necessary to state that Congress has recently amended that section to remove the amount in controversy requirement. *See* Pub.L. No. 96–486, 94 Stat. 2369 (1980).

## II. Motion for Summary Judgment

Plaintiffs urge that the Board's order barring plaintiffs from proceeding with the road relocation and recreational improvements until plaintiffs secure an Act 250 permit is improper and void under the Federal Power Act and the doctrine of federal preemption. We agree.

■ The Federal Power Act, 16 U.S.C. §§ 791a–825r, establishes a federal licensing and regulatory scheme for water power projects utilizing the navigable waters of the United States or other waters over which Congress has jurisdiction. Although the Act preserves the power of the states to regulate matters "relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein," section 27, 16 U.S.C. § 821, it is well established that the federal scheme supersedes state regulation of other aspects of the federal project. *First Iowa Hydro-Electric Cooperative v. Federal Power Commission*, 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143 (1946); *State of Washington Department of Game v. Federal Power Commission*, 207 F.2d 391 (9th Cir. 1953), *cert. denied* 347 U.S. 936, 74 S.Ct. 626, 98 L.Ed. 1087 (1954); *Citizens Utility Co. v. Prouty*, 122 Vt. 443, 176 A.2d 751 (1961), *cert. denied*, 369 U.S. 838, 82 S.Ct. 867, 7 L.Ed.2d 842 (1962); *De Rham v. Diamond*, 32 N.Y.2d 34, 343 N.Y.S.2d 84,

295 N.E.2d 763 (1973). In *First Iowa*, the seminal case for preemption by the Federal Power Act, the Federal Power Commission had dismissed a license application without prejudice because the applicant had failed to submit satisfactory evidence, pursuant to section 9(b) of the Act, 16 U.S.C. § 802(b),[3] showing compliance with Iowa law which required a state permit to construct a dam on state waters. Rejecting the Commission's position, the Supreme Court held that section 9(b) could not be interpreted to require an applicant for a federal hydroelectric project license to secure a state permit as a condition precedent to securing the federal license. Such a condition would vest in the responsible state agency an impermissible veto power over the federal project. *First Iowa*, 328 U.S. at 164, 66 S.Ct. at 911.

The Board urges that *First Iowa* is not controlling here where there is no contention that securing an Act 250 permit is a prerequisite to securing a federal license. The distinction between *First Iowa* and the present case implicit in this argument, however, is inconsequential. The result is the same whether the state permit is required as a condition precedent to obtaining a federal license or as an independent exercise of the state regulatory power. In either event, the power to withhold a state permit is the power to thwart a federal project. This is prohibited.

We also reject the Board's principal contention that preemption under the Act applies only to state regulation of those aspects of a project directly related to the construction and operation of the hydroelectric generating facility but does not extend to the regulation of corollary aspects, such as road relocation and recreational improvements, which are not directly involved in power generation. The Act creates no such dichotomy of project elements. On the contrary, "project" is defined at section 3(11) of the Act, 16 U.S.C. § 796(11), as a "complete unit of improvement or development" consisting, among other elements, of

> all miscellaneous structures used and useful in connection with said unit or any part thereof, and all water-rights, rights-of-way, ditches, dams, reservoirs, lands, or interest in lands the use and occupancy of which are necessary or appropriate in the maintenance and operation of such unit.

Moreover, the federal licensing agency is enjoined to issue licenses on the condition

> [t]hat the project adopted . . . shall be such as in the judgment of the Commission will be best adapted to a *comprehensive plan* for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, and for other beneficial public uses, *including recreational purposes.*

Section 10(a), 16 U.S.C. § 803(a) (emphasis added). To secure these goals, FERC is given the power to require appropriate modification of the federal project before license approval. *Id.*

These passages reflect a clear Congressional intent to bring all aspects of the hydroelectric project within the purview of the federal regulatory scheme. FERC's regulations fully implement this mandate.[4] The Board's attempt to carve out from the

---

3. Section 9(b) requires each license applicant to submit to the Commission:

[s]atisfactory evidence that the applicant has complied with the requirements of the laws of the State or States within which the proposed project is to be located with respect to bed and banks and to the appropriation, diversion, and use of water for power purposes and with respect to the right to engage in the business of developing, transmitting, and distributing power, and in any other business necessary to effect the purposes of a license under this Act.

4. In particular, the very elements the Board seeks to exercise regulatory control over are the subject of several provisions in FERC's regulations. *See* 18 C.F.R. § 2.7 (1980) (enumerating the responsibilities of the applicant and the Commission in the development of recreational resources at federal projects); § 4.41, Exhibit R (requiring a plan for utilization of project waters and adjacent lands for recreational purposes); and Exhibits K, M (requiring a detail map and an estimate showing the location and cost of any road which is to be developed as a project work).

federal project a sphere for the exercise of its state land use authority is quite simply unwarranted. Moreover, its reliance upon *California v. United States*, 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978), which construed a section of the Reclamation Act of 1902 that is very similar to section 27 of the Federal Power Act, is misplaced. In that case, the Supreme Court held that a state may impose any condition on the "control, appropriation, use, or distribution of water" in a federal reclamation project that is not inconsistent with clear congressional directives in the federal reclamation laws. *Id.* at 672, 674, 98 S.Ct. at 2999, 3000. In the instant case, however, neither the road relocation nor the recreational improvements planned for the Black River project falls within the narrow field reserved for state control by section 27 of the Act. As the Supreme Court noted in *First Iowa*, 328 U.S. at 175–76, 66 S.Ct. at 917:

> The effect of § 27, in protecting state laws from supersedure, is limited to laws as to the control, appropriation, use or distribution of water in irrigation or for municipal or other uses of the same nature . . . . There is nothing in the paragraph to suggest a broader scope . . . .

■ This does not mean that the State of Vermont has no role in the licensing process. Both the Federal Power Act and the FERC regulations of FERC require the presentation of evidence satisfactory to FERC showing that the applicant has complied with any of the requirements for a state permit that FERC considers appropriate to effect the purposes of the federal license. Section 9(b), 16 U.S.C. § 802(b), and 18 C.F.R. § 4.41, Exhibit D (1980). *See First Iowa*, 328 U.S. at 167, 66 S.Ct. at 913. Moreover, the Act requires that notice of a license application be given to any state or municipality likely to be interested in or affected by the application, section 4(f), 16 U.S.C. § 797(f), and FERC's rules provide for liberal intervention by interested persons. *See* 18 C.F.R. § 1.8. The import of these provisions, however, leaves no doubt that it is the function of FERC, to the exclusion of the Board and any other state agencies, to act on behalf of the people of Vermont, as well as all others, to ensure that the interests of all concerned are adequately protected. *See Federal Power Commission v. Oregon*, 349 U.S. 435, 449, 75 S.Ct. 832, 840, 99 L.Ed. 1215 (1955).

■ It is largely for the foregoing reasons that we must reject the Board's additional assertion that there is no federal preemption here where there has been no showing of actual conflict between Act 250 provisions and the Federal Power Act. The Supreme Court has enunciated a three-pronged inquiry to ascertain the parameters of preemption: pervasiveness of the federal regulatory scheme, federal occupation of the field as necessitated by the need for national uniformity, and serious danger of conflict between state laws and the administration of the federal program. *See Pennsylvania v. Nelson*, 350 U.S. 497, 502–505, 76 S.Ct. 477, 480–481, 100 L.Ed. 640 (1956). It is not the danger of conflict but the pervasiveness of the federal scheme which dictates preemption here. To allow the State of Vermont to thwart the Black River project, by requiring an Act 250 permit for portions of the project, "would result in the very duplication of regulatory authority precluded by the *First Iowa* decision." *Federal Power Commission v. Oregon*, 349 U.S. at 445, 75 S.Ct. at 838. State approval, pursuant to the Act 250 process, is thus unnecessary because authorization of this project is within the exclusive jurisdiction of FERC. *Id.* at 446 and 450, n.24, 75 S.Ct. at 841, n.24.

Accordingly, we hereby deny defendant's and intervenors' various motions and grant plaintiffs' motion for summary judgment declaring the order of the Vermont Environmental Board void. SO ORDERED.