*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0338p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

METRO HYDROELECTRIC COMPANY, LLC,
> *Plaintiff-Appellee,*

> No. 07-3291

*v.*

METRO PARKS, Serving Summit County,
> *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 06-01778—John R. Adams, District Judge.

Argued: February 6, 2008

Decided and Filed: September 4, 2008

Before: SUHRHEINRICH, COLE, and GIBBONS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Robert M. Gippin, GOLDMAN & ROSEN, Akron, Ohio, for Appellant. Michael T. McMenamin, WALTER & HAVERFIELD, Cleveland, Ohio, for Appellee. **ON BRIEF:** Robert M. Gippin, GOLDMAN & ROSEN, Akron, Ohio, for Appellant. Michael T. McMenamin, Leslie G. Wolfe, WALTER & HAVERFIELD, Cleveland, Ohio, for Appellee.

---

## OPINION

---

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Metro Parks appeals the district court's grant of a preliminary injunction to plaintiff-appellee Metro Hydroelectric Company, LLC. Metro Parks argues that the district court erred in finding that subject matter jurisdiction existed in this case and that the district court abused its discretion in issuing the preliminary injunction. Because we find that no federal subject matter jurisdiction exists in this case, we reverse the decision of the district court.

I.

The instant dispute revolves around the parties' various property rights to an area of land in Akron, Ohio, now called Gorge Metro Park. Metro Hydroelectric ("MHC") claims a property right to this area of land through the purchase of an easement from Ohio Edison on September 9, 2004. Metro Parks disputes whether Ohio Edison, in fact, owned the property rights it purported to transfer

1

to MHC. The district court, in its denial of MHC's second motion to dismiss, presented the facts underlying this dispute as follows:

> In 1929, Ohio Edison's predecessor in interest, the Northern Ohio Power and Light Company ("NOPLC" or the "Grantor") transferred by Deed, duly recorded, 144.47 acres of land to the Akron Metropolitan Park District, with its reservation of rights. This property, along with approximately ten (10) additional contiguous acres is now The Gorge Metropark. The Deed expressly reserved to NOPLC a broad set of rights allowing it to use and enjoy the property, the waters of the river, and the embankments for the purpose of generating hydroelectric power. The reservation of rights states in pertinent part:
>
> > This conveyance is made subject to the following exceptions, restrictions, reservations and limitations:
> >
> > 1. Said grantor, . . . reserves the right to forever maintain its present dam, pen stock and appurtenances thereto now located upon said premises, and *the right to repair, rebuild, remodel, change or enlarge said dam, pen stock and appurtenances*, and *the right to use so much of the adjacent premises as may be necessary in the maintenance or reconstruction of said dam, pen stock and appurtenances.*
> >
> > 2. Said grantor, . . . reserves the full right to use so much of the premises herein before described as may be necessary as a means of furnishing egress to or egress from any of grantor's property located adjacent to or surrounded by any of the premises herein conveyed; also the right *to deliver water from said dam described in paragraph "1." hereof to its hydraulic plant located adjacent to the land herein conveyed.*
> >
> > * * *
> >
> > 4. The grantor, . . . reserves all the rights which it now possesses *to the use and flow of the waters* in the Cuyahoga River, running through and along the premises herein described, and this conveyance shall not be considered or construed as a conveyance of any of grantor's rights to use or flow of said water in said river, or the conveyance of any property right upon which its said right to the use and flow of said waters is based; *and said grantor reserves the right and easement to use so much of the banks along said river as may be necessary for the full enjoyment by it of the use and flow of said waters in said river.*
> >
> > * * *
> >
> > 7. The above reservations and conditions are made not only for the benefit of the grantor, . . . , but *for its successors and assigns.*
>
> Ex. U (Doc. 1-22) at 2-4 (emphasis added).
>
> On September 9, 2004, Ohio Edison, as Grantor, and [MHC], as Grantee, entered into an Agreement entitled "Non-Exclusive Easement for the Investigation and Potential Development of Property to Produce Hydroelectric Power." Ex. V (Doc. 1-23). As stated therein, the "Purpose" of the Agreement was "to permit [MHC] to

investigate the physical, economic and environmental feasibility of, and if feasible, then subsequently to develop, construct, operate and maintain a hydroelectric power facility using the waterway, the land on or near the waterway, and/or the existing dam located on the Property." *Id.* at 1. After reciting the various rights reserved to the Grantor in the 1929 Deed, the Agreement goes on to grant "a limited, non-exclusive easement . . . to go through, over and across *and to use any and all of the foregoing Reserved Property Rights reasonably necessary for the Purpose stated above* . . . ." *Id.* at 2 (emphasis added).

*Metro Hydroelectric Co. v. Metro Parks*, 2007 U.S. Dist. LEXIS 11580, at *7-8 (N.D. Ohio Feb. 20, 2007).

On December 29, 2003, MHC submitted its application for a preliminary permit to the Federal Energy Regulatory Commission ("FERC"). The purpose of securing a preliminary permit is

for the sole purpose of maintaining priority of application for a license under the terms of this Chapter [16 U.S.C. § 791a *et seq.*] for such period or periods, not exceeding a total of three years, as in the discretion of the Commission may be necessary for making examinations and surveys, for preparing maps, plans, specifications, and estimates, and for making financial arrangements.

16 U.S.C. §798.[1] As part of its application for a preliminary permit, MHC decided that, upon acceptance of its application for a preliminary permit, it would pursue a license via the Integrated Licensing Process ("ILP").[2]

On March 15, 2005, FERC issued a preliminary permit to MHC. On October 13, 2005, MHC, pursuant to 18 C.F.R. § 5.11, submitted its Initial Study Plan, and then, pursuant to 18 C.F.R. § 5.13 and in response to comments on the part of various interested parties, submitted a Revised Study Plan on February 8, 2006. On March 9, 2006, in accordance with 18 C.F.R. § 5.13(c), FERC issued its Study Plan Determination ("SPD"), outlining the studies MHC had to conduct as part of the ILP. If MHC were to "fail[] to obtain or conduct a study as required by Study Plan Determination, its license application [might] be considered deficient." *See* 18 C.F.R. § 5.13(d). Among the studies deemed necessary by FERC for MHC to complete its license application were: (1) an aesthetic (visual, noise and odor) impact study; (2) a recreation and socioeconomic study, which included a park user survey, a recreational boating study, and a socioeconomic study; (3) a protected plant and wetland study; (4) a grading, geotechnical, slope stability and erosion evaluation study; (5) a cultural resources survey; (6) an Indiana Bat and Bald Eagle study; (7) an aquatic

---

[1]Pursuant to 16 U.S.C. § 797(e), FERC is "authorized and empowered" to:

issue licenses to . . . to any corporation organized under the laws of the United States or any State thereof . . . for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States, or upon any part of the public lands and reservations of the United States (including the Territories), or for the purpose of utilizing the surplus water or water power from any Government dam . . . .

[2]"The purpose of the integrated licensing process . . . is to provide an efficient and timely licensing process that continues to ensure appropriate resource protections through better coordination of the Commission's processes with those of Federal and state agencies and Indian tribes that have authority to condition Commission licenses." 18 C.F.R. § 5.1(e). The Integrated Licensing Process is an alternative to the "Traditional Licensing Process." *See* 18 C.F.R. § 5.3.

life/use attainment and minimum flow study, which included a minimum flow study, a water quality study, and an aquatic habitat/biota study; and (8) a combined sewer overflow impact evaluation work. Conducting many of these studies would require MHC to enter Gorge Metro Park.

On May 1, 2006, the Board of Park Commissioners of the Metro Parks, Serving Summit County, adopted Resolution 47.2006 (the "Resolution"), which states:

> Whereas, [MHC] . . . has proposed to construct a hydroelectric power generating facility in the Gorge Metro Park ("the Project"); and
>
> Whereas, [MHC] claims a right to proceed with the Project pursuant to an easement granted by Ohio Edison Company on September 9, 2004; and
>
> Whereas, the Project would be detrimental to the purpose and interests of Metro Parks, Serving Summit County; and
>
> Whereas, pursuant to the advice of legal counsel, the Board has concluded that Metro Hydroelectric Company LLC has no right to proceed with the Project and that Metro Parks, Serving Summit County should not permit the project to go forward;
>
> Now, therefore, be it resolved that following discussion, it was moved by Mrs. Buchholzer and seconded by Mrs. Curtis that the Director-Secretary and legal counsel shall do all things necessary and proper to assert the rights of Metro Parks, Serving Summit County in Gorge Metro Park and to resist the Project.

On May 31, 2006, the Director-Secretary wrote to MHC that it was the position of Metro Parks that MHC did not have the authority to enter into Gorge Metro Park for the purpose of conducting the studies necessary for the ILP. In addition, the Director-Secretary stated that "If you attempt to violate [the Resolution], that will be prevented by me and park staff, acting pursuant to the police powers granted by law to protect [Metro Parks] property."

On July 23, 2006, MHC filed a verified complaint with the United States District Court for the Northern District of Ohio, requesting a temporary restraining order ("TRO") and preliminary injunction against Metro Parks from enforcing the "Resolution and exercising its police power in furtherance of its Resolution." In addition, MHC requested a declaratory judgment stating: (1) that the Resolution "is null and void [] and further that [Metro Parks] is federally preempted from taking any actions to prevent MHC's access to the property or otherwise prevent or hinder the FERC licensing process for the Metro Hydroelectric project"; and (2) that "the reservation of rights and assignment of those rights through easement from Ohio Edison is fully enforceable by MHC against [Metro Parks]." On August 2-3, 2006, the district court held a hearing on MHC's motion for a TRO. During the hearing, the district court noted that the parties disputed the existence of subject matter jurisdiction. After asking the parties to show cause for why the motion before the court should or should not be dismissed for lack of jurisdiction, the district court held that it did in fact have jurisdiction over the case.

On August 14, 2006, the district court granted in part MHC's request for a TRO; the district court limited the TRO, requiring Metro Parks to grant MHC access to Gorge Metro Park to conduct the "Indiana Bat Study, the endangered plant and species survey, and the water quality use attainment and flow studies." On February 20, 2007, the district court, consistent with its earlier ruling, denied Metro Parks's Motion to Dismiss Amended Complaint. The next day, February 21, 2007, the district court granted in part MHC's motion for a preliminary injunction, explaining that: "Plaintiff is allowed to access The Gorge Metro Park property forthwith to conduct the non-invasive tests mandated by FERC. This Court, however, declines at this time to give the plaintiff permission

to conduct the grading and slope stability analysis."  The district court then denied Metro Parks's oral motion to stay the preliminary injunction pending appeal.

On April 23, 2007, a three-judge panel of this court granted Metro Parks a stay of the preliminary injunction, questioning the existence of subject matter jurisdiction in the instant case. On May 25, 2007, the panel denied reconsideration of the stay.

On June 14, 2007, FERC issued a letter to MHC stating the following:

> On March 9, 2006, the Commission issued its Study Plan Determination for the Metro Project.  Access to the proposed project site has been blocked by [Metro Parks] since May 1, 2006, preventing the approved studies from being conducted. Your latest effort to acquire a preliminary injunction to access the site was denied by order of the U.S. Court of Appeals on May 25, 2007.

> The ILP provides discrete time frames for studying a proposed project and developing a license application.  As you are unable to follow the prescribed schedule in this proceeding, I am terminating the ILP for the Metro Project without prejudice.[3]

MHC requested that FERC rehear the issue, but its request for a rehearing was denied on October 18, 2007.  Subsequent to the termination of MHC's ILP, Metro Parks submitted a supplemental brief to this court, arguing that "the Termination removes the entire basis upon which MHC has argued for federal jurisdiction."  MHC countered these new arguments by emphasizing that it would appeal the termination decision by FERC to the United States Court of Appeals for the District of Columbia Circuit pursuant to 16 U.S.C. § 8251(b).  Thus, MHC claims, the FERC termination ruling should not be considered final, a fact that MHC believes allows this court to retain subject matter jurisdiction over the instant case.  MHC filed a petition for review of FERC's decision to terminate the ILP with the United States Court of Appeals for the District of Columbia Circuit on December 14, 2007.

## II.

Considering whether jurisdiction to hear a case exists is the "first and fundamental question presented by every case brought to the federal courts."  *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000) (quoting *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 606 (6th Cir. 1998)).  This court "review[s] de novo questions of subject matter jurisdiction."  *Bauer v. RBX Indus.*, 368 F.3d 569, 578 (6th Cir. 2004) (citing *Caudill*, 200 F.3d at 916).

The underlying principle delimiting the scope of federal jurisdiction is that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Consequently, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Id.* (internal citation omitted).

However, as this court has noted, "the plaintiff's burden to prove federal question subject matter jurisdiction is not onerous."  *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).  Instead, "[t]he plaintiff must show only that the complaint alleges a claim under federal law, and that the claim is 'substantial.'"  *Id.*  "A federal claim is substantial unless 'prior decisions inescapably render [it] frivolous.'"  *Id.* (citing *Transcontinental Leasing, Inc. v. Michigan*

---

[3]To be sure, as previously explained, FERC's claim that MHC failed to secure a preliminary injunction on May 25, 2007 is somewhat inaccurate.  On May 25, Metro Parks was granted a stay of the preliminary injunction.

*Nat'l Bank of Detroit*, 738 F.2d 163, 165 (6th Cir. 1984)). Consequently, "unless 'prior decisions inescapably render [it] frivolous,' plaintiffs will [demonstrate the existence of jurisdiction] by showing 'any arguable basis in law' for the claims set forth in the complaint." *Bd. of Trustees v. City of Painesville*, 200 F.3d 396, 398 (6th Cir. 1999) (quoting *Musson Theatrical*, 89 F.3d at 1248). "In short . . . the plaintiff can survive [a motion to dismiss] by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248.

In applying this standard, the district court concluded that MHC had raised a substantial issue of federal law, which was "whether the plaintiff has a right, based upon the authority granted under the [Federal Power Act (the "FPA")], to enter on the property for purposes of conducting the FERC mandated studies – irrespective of whether it be a property owned by the Metro Parks or property owned by a private landowner." The district court continued, explaining its holding as follows:

> The complaint requests that the Court determine whether the defendant's refusal to be bound by the authority of the FERC, as well as its obstruction of the FERC's licensing process is a violation of the FPA. If the plaintiff doesn't have access to the adjacent property to do the studies that the FERC requires, then the defendant is, in fact, negating what the federal law requires, *i.e.*, the right for individuals or companies to be able to determine whether a hydroelectric project, as defined at § 3(11) of the FPA, 16 U.S.C.A. § 796(11), is feasible. *See Town of Springfield, Vt. v. State of Vt. Environmental Bd.*, 521 F.Supp. 243, 249 [(D. Vt. 1981)].

*Metro Hydroelectric Co. LLC v. Metro Parks*, 443 F. Supp. 2d 938, 940-41 (N.D. Ohio 2006). Consequently, the district court "conclude[d] that it ha[d] federal question jurisdiction to determine whether the defendant's acts [were] preempted by federal law. Federal preemption forms the basis for federal question jurisdiction under 28 U.S.C. § 1331 in a suit for equitable relief."

Accordingly, MHC both in its briefing and at oral argument has sought to characterize this case as one raising a federal question "embedded in state law claims." *See Grable & Sons Metal Products, Inc., v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005); *see also Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 557 (6th Cir. 2007) (en banc) (explaining that "[t]he issue to be decided in the present case is whether the substantial-federal-question doctrine provides federal subject-matter jurisdiction over a state law claim on the basis that an embedded element of the claim concerns [a federal question]"). However, contrary to appellee's repeated protestations to the contrary, we find that both *Grable* and *Mikulski* are inapposite because the instant case involves no federal issue at all. Instead, the only issue raised by the instant case is governed by state property law. As a result, for the reasons set forth below, we conclude that no federal subject matter jurisdiction exists in this case.

According to the district court, the federal question that gives rise to subject matter jurisdiction is whether MHC, which obtained a preliminary permit from FERC, has been granted authority under the FPA to enter the property of Metro Parks. As this court has previously noted, the test for whether a complaint presents a substantial federal question "is 'whether there is *any* legal substance to the position the plaintiff is presenting.'" *In re Bendectin Litigation*, 857 F.2d 290, 300 (6th Cir. 1988) (emphasis in original) (citing 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3564, at 67 (2d ed. 1984)). Thus, MHC must show an "'arguable basis in law' for the claims set forth in the complaint." *City of Painesville*, 200 F.3d at 398 (6th Cir. 1999) (quoting *Musson Theatrical*, 89 F.3d at 1248). In the instant case, MHC fails to cite any authority that would even imply that the FPA grants an entity, which has secured a preliminary permit from FERC, the authority to enter private property.

In fact, the regulations promulgated by FERC point to the exact opposite conclusion. First, FERC regulations require each applicant "[f]or a preliminary permit or license . . . to obtain and . . .

maintain any proprietary right necessary to construct, operate, or maintain the project." 18 C.F.R. § 4.32(a)(1). Consistent with this requirement, MHC stated in its Preliminary Permit Application that it would "obtain and maintain any proprietary rights necessary to construct, operate and maintain the Project." This requirement appears to place the burden of securing the property rights necessary to complete an investigation pursuant to a preliminary permit on the permittee. This conclusion is further supported by 16 U.S.C. § 814, which enables a *licensee* to acquire necessary property via eminent domain under particular circumstances; there is no such parallel provision that enables permittees to acquire necessary property rights via eminent domain.

In fact, 16 U.S.C. § 798 makes clear that the "sole purpose" of securing a preliminary permit is to

> maintain[] priority of application for a license under the terms of this Chapter [16 U.S.C. § 791a *et seq.*] for such period or periods, not exceeding a total of three years, as in the discretion of the Commission may be necessary for making examinations and surveys, for preparing maps, plans, specifications, and estimates, and for making financial arrangements.

FERC further emphasized this fact in its order issuing a preliminary permit to MHC, stating unequivocally

> The purpose of a preliminary permit is to maintain priority of application for a license during the term of the permit while the permittee conducts investigations and secures data necessary to determine the feasibility of the proposed project . . . . The permit confers no authority on the permittee to . . . occupy or use lands or other property of the United States or of any other entity or individual.

Indeed, FERC even requires preliminary permittees to include in their semi-annual progress reports updates regarding, "where studies require access to and use of land not owned by permittee, the status of the permittee's efforts to obtain permission thereof."

In sum, the district court's contention that federal jurisdiction obtains is incorrect.[4] There is no case, regulation or statute that provides any indication that a preliminary permit grants the permit holder any right to enter private property to conduct FERC studies; to the contrary, all indications from the relevant statutes and regulations point to the opposite conclusion.[5] Thus, we conclude that there is no "'arguable basis in law' for the claims set forth [by MHC] in [its] complaint." *See City of Painesville*, 200 F.3d at 398 (quoting *Musson Theatrical*, 89 F.3d at 1248).[6]

---

[4] Metro Parks, in its supplemental brief, argues, in the alternative, that FERC's June 14, 2007 decision to terminate the ILP and October 18, 2007 decision to deny a rehearing on the termination, renders this case moot. However, we need not decide this issue given our conclusion that no federal jurisdiction exists in this case.

[5] Indeed, the district court's depiction of these studies as "FERC mandated" is a mischaracterization of the role played by these studies in the FERC licensing scheme. The studies outlined by FERC are necessary to complete the license application; the only penalty for failure to conduct these studies appears to be the termination of the ILP.

[6] Alternatively, MHC contends that federal subject matter jurisdiction exists because the FPA preempts the actions taken by Metro Parks. In doing so, MHC urges us to look to *Town of Springfield v. Vermont Environmental Bd.*, 521 F. Supp. 243, 249 (D. Vt. 1981) (holding that Vermont's licensing scheme was preempted by the FPA because it enabled the state to "thwart a federal project" by "withhold[ing] a state permit"). However, in the instant case, Metro Parks has not employed its state powers to prohibit action that FERC would permit; instead, Metro Parks has simply sought to enforce its property rights. The only way to challenge these rights would be to challenge Metro Parks's property interests via state law claims and not federal law claims. Thus, the Resolution cannot be read as undermining the authority of FERC and thus raising a preemption issue under the Supremacy Clause.

### III.

Because we find no federal subject matter jurisdiction exists in this case, we reverse the district court's grant of a preliminary injunction and remand the case with directions that it be dismissed for lack of jurisdiction.